## Dunbar vs. Glenn and another.

*Trade-marks: Injunction.*

1. The owner of any peculiar natural product (as the water of a mineral spring), which has acquired reputation and mercantile value through his industry, sagacity and enterprise, is entitled, like the manufacturer of artificial products, to have his original trade-mark protected.

2. Where a particular word, or combination of words, used as a trade-mark, by virtue of its original signification, or by association, distinctively points to the origin or ownership of the article to which it is applied, it will be protected.

3. A generic or geographical name — one which merely designates the city or district of country where an article is manufactured or otherwise produced, or which merely describes the quality or constituents of the article, and which can be employed with truth by other manufacturers — is not subject to legal protection as a trade-mark.

4. The name "Bethesda," applied by the plaintiff to her mineral spring, and used as a mark or brand upon the barrels in which the waters thereof

have been put up by her for shipment and sale, and recorded by her as a trade-mark in the patent office, is a proper trade-mark; and the fact that defendant owns another spring within twelve hundred feet of that belonging to plaintiff, which is alleged to have exactly the same chemical constitution and curative properties, does not entitle him to use such trade-mark: the name "Bethesda" not being the geographical designation of any district of country or civil division within or near which either of said springs is located.

5. Upon the facts alleged in the pleadings, the plaintiff is entitled to an injunction restraining defendants from selling water represented, by trademark, label or other simulated device, as being "Bethesda Mineral Water."

APPEAL from the Circuit Court for *Milwaukee* County.

The pleadings in this action are here stated in the language employed for that purpose by Mr. Justice COLE in his opinion as originally prepared: "The complaint alleges, in substance, that the plaintiff has, for upwards of seven years last past, been the owner of a certain mineral spring in the village of Waukesha, known by the name of, and generally called, the 'Bethesda Mineral Spring,' the waters of which are of great virtue in the cure of diseases, and are widely known throughout the United States for their curative properties, and which spring is resorted to by large numbers of people from all sections of the country to drink thereof; that during all said period the plaintiff has offered for sale, and sold, and shipped to all parts of the United States, the waters of said spring in barrels, which barrels are and have been labeled and branded with the plaintiff's own proper device and trade-mark, adopted by her for that purpose in the year 1869, and which consisted in the word 'Bethesda' branded on said barrels, and which said trade-mark, so appropriated, has been used and known to identify and distinguish the mineral water obtained from plaintiff's said spring. It is then alleged that the plaintiff has caused her trade-mark to be recorded in the patent office according to the provisions of the act of congress upon the subject; that by reason of the long experience and great care

of the plaintiff in her business, and the good quality of the said mineral water, the same has become widely known throughout the United States as a valuable and useful article; has acquired a high reputation as a curative agent for specific diseases; and has commanded, and still commands, an extensive sale, which is and has been a source of great profit to the plaintiff. It is further alleged, that the water is known to the public and to purchasers and consumers thereof by the said name of 'Bethesda Mineral Water,' and by the plaintiff's own device and trade-mark aforesaid; that in the months of May, June and July, 1876, the defendants, well knowing but willfully disregarding plaintiff's rights, fraudulently prepared and offered for sale, and did, at the time this suit was commenced, offer for sale, at Waukesha and elsewhere, water from a spring of which the defendant *Glenn* claims to be the owner and proprietor, and the defendant *Glenny* the superintendent or manager, which, with intent to deceive and defraud the public and the buyers and consumers thereof, they caused to be put up in imitation of plaintiff's mineral water and in similar packages, such packages being labeled with a nearly similar label, which was in the words 'Glenn-Bethesda Mineral Water;' that defendants have caused to be published and circulated throughout the United States and in the principal cities thereof, where the Bethesda water of the plaintiff is most known and used, printed circulars, one of which is annexed to and made a part of the complaint; that defendants give out and represent that the water so offered and sold by them is the same Bethesda water, and identical with the water from plaintiff's spring; and that such imitation of plaintiff's trade-mark is calculated to deceive purchasers and consumers of the mineral water from plaintiff's said Bethesda spring, and actually has misled and does mislead many of them to buy the article sold and advertised by defendants in the belief that it is the mineral water from plaintiff's spring, greatly to the diminution of plaintiff's profits and business

It is also alleged that the water so put up and sold by defendants in imitation of the Bethesda Mineral Water from plaintiff's spring, is of a greatly inferior quality, and wholly unknown and untried as to its curative properties; and that, by reason of the premises, the general esteem and reputation of the genuine Bethesda Mineral Water has been injured, greatly to the diminution of plaintiff's business and profits. These are the more material statements of the complaint."

The essential part of the circular annexed as an exhibit to the complaint is as follows:

"OFFICE OF GLENN-BETHESDA MINERAL SPRING.

J. K. Glenn, *Proprietor*.                    H. N. Glenny, *Superintendent*.

Waukesha, Wis., ———, 187–.

M . —— ——:

My Dear Sir:    Only $5.00 per barrel will be charged to the Trade for Glenn-Bethesda Mineral Water on board the cars."

Upon this complaint a court commissioner granted an injunctional order " that the defendants and each of them, their and each of their agents and servants, do absolutely refrain from selling or exposing for sale, or procuring to be sold, any mineral or other water described as or purporting to be Bethesda Mineral Water, having affixed to the packages in which the same may be contained, any such labels or trade-mark as are mentioned in the complaint, or any other labels or trade-mark so contrived or expressed as, by colorable imitation or otherwise, to represent the mineral or other water sold by the said defendants to be the same as that dealt in and sold by the plaintiff, and from advertising, issuing circulars or using trade cards so contrived or expressed as to represent that the mineral or other water sold or proposed to be sold by the defendants, is Bethesda Mineral Water, or the same water dealt in or sold by the plaintiff, until the further order of this court."

" In their answer, the defendants admit that plaintiff is the

owner of a certain mineral spring in the village of Waukesha, the waters of which possess virtue in the cure of diseases, and which are resorted to by numbers of people from different parts of the country to drink; and that plaintiff has, by her husband, for some years offered for sale, and sold, and shipped to different parts of the United States, the waters of said spring in barrels, which have been labeled or marked in some instances with the words 'Bethesda Mineral Water, Waukesha, Wisconsin,' and in others with the word 'Bethesda' only, on the head of the barrels. They allege that they have no knowledge whether plaintiff has caused to be recorded the trademark as alleged, and deny that the word 'Bethesda' can constitute a lawful trade-mark; admit that the water of plaintiff's spring is of good quality when properly prepared for shipment; that it has become widely known as a valuable and useful article; that it has a high reputation as a curative agent; that it has a considerable sale in the United States; and that it is generally known as Bethesda or Waukesha water. They deny that they have fraudulently prepared or offered for sale, at Waukesha or elsewhere, water from a well or spring of which the defendant *Glenn* is owner or proprietor, and the defendant *Glenny* is superintendent, with intent to deceive the public and the buyers and consumers thereof; or that they have caused any water to be put up or sold with any such intent, in imitation of plaintiff's mineral water, or in similar packages to it; or that they have labeled any such packages with a nearly similar label to the plaintiff's alleged label, or with a label in the words 'Glenn-Bethesda Mineral Water.' They then state that the defendant *Glenn* is the owner of a spring at Waukesha, situate some twelve hundred feet from the spring of the plaintiff; that the waters thereof are identical in composition and properties with the waters of plaintiff's spring; that the defendant *Glenn* is engaged in the sale of the water of his spring, and the defendant *Glenny* is the superintendent thereof; that to a limited extent circulars have

Dunbar vs. Glenn and another.

been issued in the form of the one attached to the complaint; but that, when the suit was commenced, the waters were advertised by different circulars [a copy of one of which is annexed to the answer as Exhibit A]; that the barrels used by them are not similar in form to the barrels used by the plaintiff, but are different, and contain no trade-mark or device in the nature of a trade-mark, and are not likely to mislead or deceive the public, or induce the belief that the barrels of the defendant *Glenn* are the barrels of, or contain the waters of the spring of, the plaintiff; and they deny that they have ever used the trade-mark of the plaintiff, or any copy or imitation, semblance or appearance thereof. They further aver that the waters of both springs have been analyzed by competent chemists, and that the analysis [a certificate of which forms part of a circular annexed to the answer as Exhibit B] shows that the waters of both springs are in reality identical, and possess the same medicinal properties. These are the principal portions of the answer."

The essential portion of exhibit " A," annexed to the answer, is as follows:

" GLENN-WAUKESHA MINERAL SPRINGS,

J. K. GLENN, *Proprietor.*                    H. N. GLENNY, *Superintendent.*

"WAUKESHA, WIS., ——, *187-*.

*Mr.* —— ——.

MY DEAR SIR: Only $5 per barrel will be charged to the *trade* for Glenn Waukesha Mineral Water on board the cars."

Exhibit " B " was a circular with the following head-lines:

"THE GLENN WAUKESHA MINERAL WATER,

OF

WAUKESHA, WISCONSIN,

IDENTICAL WITH

BETHESDA,

As certified by C. E. Chandler, Ph. D., in his within certificate of analysis."

This circular contains various statements (including the cer-
tificate of analysis referred to in the head-lines), designed to
show the identity, in character and origin, of the Bethesda
water with that from defendants' spring.

Upon the pleadings, defendants moved the court to dissolve
the injunction granted. On the hearing of this motion, the
plaintiff read an affidavit of Richard Dunbar, which states
that he is the general manager of the Bethesda spring at Wau-
kesha, and makes this affidavit on behalf of the plaintiff, the
owner of said spring; that, prior to the injunction herein, the
spring of the defendant *Glenn* was advertised, not only by the
circular annexed to the complaint, but also by a circular an-
nexed to said affidavit; that said spring was exclusively ad-
vertised by such circulars, in all which the word "Bethesda"
was used in describing the spring and the water therefrom;
that such circulars were issued to a very large extent, and
were sent by mail all over the United States and the Canadas,
and defendants thereby sought to palm the waters of said
spring upon the public as Bethesda water, and said exhibit
annexed to the affidavit was in fact delivered by the defend-
ant *Glenn* to a Mr. Turner of Connecticut, on Saturday or
Monday, the 29th or 31st of July last, and since the injunc-
tion herein, by whom the same was delivered to the affiant;
that the circulars attached to the defendants' answer herein
have been used and issued by said defendants since the in-
junction herein, and not before that time, since they pirated
the trade-mark "Bethesda," and solely in consequence of the
injunction granted in this action; that it is untrue that the
waters of the plaintiff's spring and that of the defendant *Glenn*
are identical; that as a matter of fact, as affiant is informed
and believes, the defendant *Glenn*, at or about the time of the
discovery of his spring, purchased of the plaintiff Bethesda
water, which he delivered to chemists and analysts, and espe-
cially to Professor Chandler of Columbia College, as water
from the defendants' spring, and that such examination and

Dunbar vs. Glenn and another.

analysis was made of Bethesda water, and not of the water of the defendants' spring; and as deponent is informed and believes, the water of defendants' spring has in fact never been analyzed by any one, and there would be no sale for it except from the use of plaintiff's trade-mark "Bethesda" in connection therewith.

The exhibit attached to this affidavit, purporting to be a circular by the defendant *Glenn*, appears to be identical with exhibit "B" annexed to the answer, except that the words GLENN BETHESDA are everywhere substituted for GLENN WAUKESHA.

The defendants read in rebuttal an affidavit of the defendant *Glenn*, which states that since the service upon them of the injunctional order herein, defendants have not issued or used, for the purpose of advertising the water of the spring owned by said *Glenn*, any of the circulars like exhibit "A" annexed to the complaint, or like the exhibit annexed to Dunbar's affidavit; that it is not true, as stated in said Dunbar's affidavit, that the exhibit thereto annexed was delivered by the affiant to a Mr. Turner of Connecticut, on Saturday or Monday, the 29th or 31st of July last, or at any other time; that it is not true, as stated in said Dunbar's affidavit, that this affiant, at or about the time of the discovery of his spring, purchased of the plaintiff Bethesda water, which he delivered to chemists or analysts, or especially to Professor Chandler, of Columbia College, as water from the defendant's spring, or that such examination or analysis was made of water from plaintiff's spring, and not of the water of the defendant's spring, or that the water of the defendant's spring has in fact never been analyzed by any one, or that there would be no sale for the waters from defendant's spring except from the use of plaintiff's alleged trade-mark, "Bethesda," in connection therewith; that, after the discovery of his said spring at Waukesha, and about the last of September or the first of October, 1875, affiant shipped a barrel of the water of his said

spring to Professor Chandler of Columbia College, New York, to be analyzed, and also another barrel of said water to Professor Doremas, of New York College; that said professors received said water and analyzed the same; that an exhibit annexed to this affidavit is the original certificate of the analysis of said water made by Professor Chandler; and that Professor Doremas stated to the affiant that he had made a partial but not an exhaustive analysis of said water, and that his analysis, so far as made, agreed with that of Professor Chandler.

Upon these affidavits and the pleadings, the court made an order dissolving the injunction. From this order the plaintiff appealed.

For the appellant, a brief was filed by *Jenkins, Elliott & Winkler*, and the cause was argued orally by *James G. Jenkins*. They contended, 1. That plaintiff is injured by the method adopted by defendants to market the product of their spring. (1) If plaintiff has no property in the name of her spring, and of the water therefrom, yet she has a trade, represented by a particular style of address, which cannot be lawfully simulated. If her commodity were confessedly the same as that of any person who should choose to market water from the village of Waukesha, yet she has secured a set of customers to whom she holds herself out by a particular style and name; and this cannot be borrowed. *Lee v. Haley*, 22 L. T. Rep. (N. S.), 251; *Christy v. Murphy*, 12 How. Pr., 77; *McCardell v. Peck*, 28 id., 120; *Howe v. Searing*, 19 id., 14; *Comstock v. Moore*, 18 id., 422; *Knott v. Morgan*, 2 Keen, 213; *Stone v. Carlan*, 13 Monthly Law Rep., 360; *Marsh v. Billings*, 7 Cush., 326; Upton on Trade-marks, 93; *Croft v. Day*, 7 Beav., 84; *Taylor v. Carpenter*, 2 Sandf. Ch., 613; *Howard v. Henriques*, 3 Sandf. S. C., 725; *Amoskeag Manuf. Co. v. Spear*, 2 id., 599; *Braham v. Bustard*, 1 Hem. & M., 447; *Coffeen v. Brunton*, 4 McLean, 516; *Leather Cloth Co. v. Am. Leather Cloth Co.*, 11 Jur., N. S., 513. If a person

use names, marks, letters or other *indicia*, for the purpose of selling his goods as the goods of another, and such means tend to attract to himself the trade that would have flowed to the person previously accustomed to use them, they will be enjoined. *Perry v. Truefitt*, 6 Beav., 66; *Croft v. Day*, *supra; Crawshay v. Thompson*, 4 Man. & G., 357; *Candee v. Deere*, 10 Am. Law Reg., N. S., 694; *Newman v. Alvord*, 49 Barb., 588; 2 Opinions Att'ys Gen., 109; *Partridge v. Menck*, 2 Sandf. Ch., 625–6. (2) The good will of plaintiff's spring as a public resort is entitled to protection against the defendants. No principle applicable to a hotel could be withheld from a local *sanitarium;* and the plaintiff, as proprietor of this resort, is fully within the above cited cases of *Stone v. Carlan*, *McCardell v. Peck*, *Marsh v. Billings*, and others of like character. (3) Plaintiff is injured even if defendants' motives were blameless; and where goods are offered with misleading marks or names, etc., it is not a sufficient defense that the defendant offered them expressly as his own production, or that he dealt candidly in other respects, or that he honestly believed that he had a right to use the name or mark appropriated, or that the imitation or resemblance was not such as to mislead the prudent or wary, or that the goods offered by him are equal or superior in quality to those of the plaintiff. *Sykes v. Sykes*, 3 Barn. & Cress., 543; *Taylor v. Carpenter*, 3 Story, 458; 1 Wood. & M., 1; *Coats v. Holbrook*, 2 Sandf. Ch., 597; *Meriden Brittania Co. v. Parker*, 30 Conn., 450; *Amoskeag Manuf. Co. v. Garner*, Am. Law Times Rep., April, 1877, p. 180; *Croft v. Day* and *Crawshay v. Thompson*, *supra; Fetridge v. Merchant*, 4 Abb. Pr., 156; *Comstock v. White*, 18 How. Pr., 421; Upton on Trade-marks, 222; Story on Part., § 99; *Blofeld v. Payne*, 4 Barn. & Ad., 410. 2. That in consequence of defendants' methods of offering for sale the water from their spring, ordinary persons are likely to mistake the same for waters from the plaintiff's spring. Upton on Trade-marks, 221; Browne's Trade-marks,

§ 398; *Seixo v. Provezende*, L. R., 1 Ch. Appeals, 192; *Hostetter v. Vowinkle*, 1 Dillon, 329; *Walton v. Crowley*, 3 Blatch., 440; *Taylor v. Carpenter*, 3 Story, 458; *S. C.*, 2 Sandf. Ch., 617; *Spottiswoode v. Clark*, 10 Jurist, 1,043, and 2 Sandf. Ch., 628. 3. That the name "Bethesda" is a valid trademark in this case. (1) The name itself is a fit one to be appropriated for such a purpose. [As to the origin and supposed mystic meaning of the word, counsel cited Grove's Greek and English Dic.; Encyc. Brit.; John V, 2 et seq., and the commentators from Origen to Bishop Lowth; Hitchcock's "Christ the Spirit," vol. 1, pp. 107, 446; vol. 2, pp. 154–5.] Its being previously so far removed from meaning a mineral water, is its peculiar virtue as a trade-mark. *Filley v. Fassett*, 44 Mo., 173. It affords not the least indication of the properties, constituent elements, or grades of quality, of any substance; it had not been appropriated by the vendor of any commodity; nor is it the geographical name of the locality. It had been fully recognized by the public. It had been duly recorded in the patent office, though the commissioner of patents is forbidden to record "any proposed trade-mark which is not and cannot become a lawful trade-mark." R. S. U. S., § 4939. In an issue in chancery upon an injunction, such a record should turn the scale. (2) Vendible water of a natural spring is as susceptible of a trade-mark as other merchandise. *Congress & Empire Spring Co. v. High Rock Congress Spring Co.*, 45 N. Y., 291. If the separately vended waters were known to be parts of the same body, that fact would be insignificant. *Lee v. Haley, supra;* Le Technologiste, tome XIII, p. 213, cited in Browne on Trade-marks, § 170. But there are no means by which a complete identity in character between the waters of separate springs can be demonstrated. Chemical analysis discloses constituent matters, but not their conditions of union. The same substances in the same proportions do not import the same properties, in chemistry. Gases are common in mineral waters. Take by weight eight parts

of oxygen and one part of hydrogen and mix them. We have now the most inflammable of all substances. They are only mixed. Now, chemically combine them, by merely supplying appropriate conditions, and the same things in the same proportions form water — the most incombustible of bodies. Stockhardt, Johnston, Turner, Fowne, etc. The same contrasts are presented between compounds chemically combining the same substances in the same proportions. It is the chemical paradox. Oil of roses and street gas are an example. Oil of lemons will turn into turpentine without the least chemical alteration. Starch and sugar are chemically identical. Common salt consists of a deadly gas (chlorine) and a shining metal (sodium.) Even without combination with anything, a simple substance, pure carbon, presents the extreme contrast of the diamond, charcoal and graphite. Wells' Chemistry, *Allotropism, Isomerism*, pp. 182, 183. Local proximity of springs affords little presumption of similar qualities. A place favorable to the exit of one subterranean stream may attract several from diverse distant sources. Streams, under as above ground, tend not to split, but to join. Temperature is more communicable than matters held in suspension or solution. Yet hot and cold springs often issue close together. After the Salt Sulphur Spring of Virginia had become celebrated, accident opened another within 600 feet of the former, both being of large volume, and radically different properties. Martin's Gazetteer of Virginia, p. 397. In the Yellowstone region, within a few yards of the tremendous and violent eruptions of a great geyser, may often be seen a petty vent entirely without sympathy with it; in some instances they are even side by side. U. S. Geological Survey, 1872, p. 236. But in medicinal waters, even more than in champagnes and other fine wines and liquors, no change could be too slight to differentiate them. As water, they might be substantially the same, after the characteristic for which they had attained celebrity had been entirely destroyed. The soil might work

at least a very slight alteration of chemical conditions, or sub-
traction or addition of ingredients, during the flow of but a
few feet.   If so, the complexity and delicacy of subtle com-
binations would certainly be endangered.   Hence, the sim-
ilarity of demonstrable ingredients is of feeble influence in de-
termining public favor toward a mineral water, compared
with the powerful partiality founded on experience.   All the
watering places in the world would be abandoned if their
credit should cease to depend on their experienced effects.
Should the public come to regard mainly chemical constitu-
tion, the apothecary would abolish the trade in spring waters.
A particular water cannot be identified at all but by the place
of its exit from the ground.   These several waters may possi-
bly come from a common stream.   But, as medicinal waters,
they are nevertheless not waters of a stream, but of springs.
The water that springs or leaps forth at a particular spot is the
natural mineral water.   In this case, the water dealt in by
the plaintiff is not water of a particular stream (which water
might have been changed after separation from the main
stream), nor water of any formulable chemical or other con-
stitution, but water that can be identified only by its being
seen to issue from the ground at a certain spot, of which fact,
and of its being vended in merchantable condition, she gives
a pledge of verity and a guaranty in the name "Bethesda."
4. That if the plaintiff's trade-mark is valid, defendants' acts
constitute an infringement.   In the following, among many
other cases, the violation was less obvious than in the present
case:. *Burnett v. Phalon,* 9 Bosw., 198; *Filley v. Fassett,*
*supra; Gout v. Aleploglu,* note to 6 Beav., 69; *Braham v.*
*Bustard, supra; Lockwood v. Bostwick,* 2 Daly, 521; and
cases cited in Browne on Trade-marks, § 450.   The cases in
which protection was refused, are all distinguishable from this.
In *Canal Co. v. Clark,* 13 Wall., 311 (the only strictly trade-
mark case decided by the supreme court of the United States),
the principles laid down fully confirm the position here taken;

but if the plaintiff inhabited a large region, which had been known as "Bethesda," long before the water of her spring had acquired that name, her case would be similar to that. Counsel also distinguished cases in which the words sought to be protected were from their common signification necessarily applicable, or were ordinarily applied, to any substance vended for the same use (*Falkinburg v. Lucy*, 35 Cal., 67; *Wolfe v. Burke*, 7 Lans., 155; *Corwin v. Daly*, 7 Bosw., 224), or were merely descriptive of the ingredients of the article sold (*Caswell v. Davis*, 58 N. Y., 223; *Bradley v. Norton*, 33 Conn., 157), or it was found as a fact that the simulation was not calculated to mislead (*Bell v. Locke*, 8 Paige, 75), or the right to use the name was governed by contract stipulations (*Howe v. The Howe Machine Co.*, 50 Barb., 236).

The counsel also subjoined to their brief the following additional citations:

| | | |
|---|---|---|
| *Essence of Anchovies* | Burgess *v.* Burgess | 17 Jur., 292. |
| *Durham Mustard* | Harrison *v.* Taylor | 11 Jur. (N. S.), 408. |
| *Ainsworth Thread* | Ainsworth *v.* Walmsley | 35 L. J., 352 (L. R., 1 Eq., 518). |
| *Southron's Broseley Pipes* | Southron *v.* Reynolds | 12 L. T., 77. |
| "*303*" | Gillott *v.* Esterbrook | 47 Barb., 455. |
| *Bell's Life* | Clement *v.* Maddick | 22 Law Rep., 428; (1 Giff., 98). |
| "*H. H. 6*" | Ransome *v.* Bentall | 3 Law Jour. (N. S.).161. |
| *Steel case* | The Collins Co. *v.* Cowen | 3 Kay & Johns., 428. |
| *Barrel case* | Mooreman *v.* Hoge | 4 Am. Law T., 217. |
| *Pain Killer case* | Davis *v.* Kendall | 2 R. I., 566. |
| *Genuine Yankee Soap* | Williams *v.* Johnson | 2 Bosw., 1. |
| *Roger Williams' Long Cloth* | Barrows *v.* Knight | 6 R. I., 434. |
| *Courtria Flax* | Dale *v.* Smithson | 12 Abb. Pr., 237. |
| *What Cheer House* | Woodward *v.* Lazar | 21 Cal., 448. |
| *Police Gazette* | Matsell *v.* Flanagan | 2 Abb. Pr. (N. S.), 459. |
| *Opoponax* | Smith *v.* Woodruff | 48 Barb., 438. |
| *Mrs. Winslow's Soothing Syrup* | Curtis *v.* Bryan | 36 How. Pr. R., 33. |
| *Bismarck Collar* | Messerole *v.* Tynberg | 4 Abb. Pr. (N. S.), 410. |
| *Hero Jar case* | Rowley *v.* Houghton | 2 Brewster, 303. |

Dunbar vs. Glenn and another.

| | | |
|---|---|---|
| *Teaspoon* | Boardman *v.* Meriden Co. | 35 Conn., 402. |
| *Colton Dental* | Colton *v.* Thomas | ·2 Brewster, 308. |
| *Stove Polish* | Dixon Co. *v.* Guggenheim | id., 321. |
| *Hair Renewer* | Gillis *v.* Hall | id., 342. |
| *Howqua's Mixture* | Pidding *v.* How | 8 Sim., 477. |
| *Morison Universal Medicine* | Morison *v.* Salmon | 2 Man. & Gr., 385. |
| *Ethiopian Stocking* | Hine *v.* Lart | 10 Jur., 106. |
| *Rodgers' & Sons Cutlery* | Rodgers *v.* Nowill | 5 Man., Gr. & Scott, 109. |
| *Holloway's Pills* | Holloway *v.* Holloway. | 13 Beav., 209. |
| *Patent Pins* | Edleston *v.* Vick | 18 Jur., 7. |
| *Anatolia* | McAndrews *v.* Basset | 10 Jur. (N. S.), 550. |

Counsel also referred to the notes to 2 Kent's Com., *372, and those to Hilliard on Inj., 499; the articles in 16 Am. Jur., 87, 25 id., 279, and 6 Western L. J., 337; the cases collected by counsel in 58 N. Y., 223, and at the end of *Coats v. Holbrook*, 2 Sandf. Ch., 599; and the collections of *dicta* and adjudged cases in Browne on Trade-marks.

For the respondents, a brief was filed by *Cottrill & Cary*, and the cause was argued orally by *A. L. Cary*. They argued substantially as follows: 1. The act of congress (R. S. U. S., §§ 4937–47) does not define what is or shall be a lawful trade-mark, leaving that to be determined by the common law; but the registration of an unlawful trade-mark is void and of no effect (§§ 4937, 4939). If, therefore, plaintiff's alleged trade-mark is an unlawful one, she derives no protection from having recorded it in the patent office. 2. The word "Bethesda," in the alleged application and use of it by the plaintiff, is not a lawful trade-mark, because it does not denote the origin or ownership of the article to which it is applied. *Canal Co. v. Clark*, 13 Wall., 311, 322–3; *Amoskeag Manuf. Co. v. Spear*, 2 Sandf. S. C., 599, 605; *Corwin v. Daly*, 7 Bosw., 222, 226; *Caswell v. Davis*, 58 N. Y., 223, 235; *Congress Spring Co. v. High Rock Spring Co.*, 45 N. Y., 291, 295, 299; Upton on Trade-marks, 98–101. The word "Bethesda" does not in itself indicate origin or ownership,

neither does it *by association*, in its alleged application and use by the plaintiff. The only application and use alleged is by branding it upon the barrels in which plaintiff sold and shipped the waters of her spring. It is not alleged that her own name was branded upon the barrels in connection with the word "Bethesda," or that her name has been in any way used or associated with this word in its alleged use as a trade-mark. See the allegations of the complaint in *Congress Spring Co. v. High Rock Spring Co., supra*, on pp. 292–3. 3. The word "Bethesda," as used by plaintiff, denotes the kind, character, quality, utility and destined use of the waters of her spring, and is therefore not a lawful trade-mark. *Canal Co. v. Clark*, 13 Wall., 311, 323; *Amoskeag Manuf. Co. v. Spear, supra*, p. 606; *Corwin v. Daly, supra*, pp. 226–7, 232–3; *Caswell v. Davis, supra*, p. 229; *Taylor v. Gillies*, 59 N. Y., 331; *Stokes v. Landgraff*, 18 Barb., 608; *Choynski v. Cohen*, 2 Am. R., 476; *Burke v. Cassin*, 13 id., 204. From its biblical use, this word, as applied to waters, simply denotes, in the common understanding, their healing or curative qualities. This being its significance and use, it may be applied with equal truth to any waters having qualities the same as or similar to those of plaintiff's spring; and it may be lawfully so applied. If a stream of water with healing qualities, flowing underground through the adjoining lands of A. and B., should come to the surface and form a spring on A.'s land near the dividing line, and be called "Bethesda" by A. to denote its healing qualities, and if the same stream should come to the surface and form a spring on B.'s land just over the dividing line, would it not be Bethesda water on the land of B. as well as on that of A.? B. would not be misleading the public by calling his water "Bethesda," because it would be identical with the water of A. In the Congress Spring case plaintiffs carefully alleged that the waters of no other spring possessed the same curative properties as those of Congress Spring; and this allegation was treated by the court

as an essential one in determining the validity of the complaint. If a trade-mark can be lawfully applied to a mere product of nature, it should be with this difference, as distinguished from the application of a trade-mark to the products of art, that all persons having the same product of nature might lawfully use the same name, mark or symbol to designate it; because nature's laboratory, under the same circumstances and conditions, will always produce like results, while art, however favorable the conditions, can never produce exactly the same results. 4. Defendants, in whatever use they have made of the word "Bethesda," have always prefixed to it the word "Glenn," and have always associated with such use the name of *J. K. Glenn*, as proprietor, and that of *H. N. Glenny*, as superintendent, of the spring. By such use, the public, or plaintiff's customers, were not led to believe, in dealing with defendants, that they were purchasing the water of plaintiff's spring; and hence plaintiff has suffered no injury. *Partridge v. Menck*, 2 Sandf. Ch., 622. 5. The only alleged use by the plaintiff of her alleged trade-mark was by branding it upon the barrels in which she shipped and sold the waters of her spring. Defendants have never made any such use of the word, and have used it only to a very limited extent in circulars issued by them. This would not constitute a pirating of the plaintiff's use.

COLE, J. Upon principles which courts of equity have often recognized and enforced, we are satisfied that the plaintiff is entitled to an injunction restraining the defendants from selling, or procuring or offering to be sold, any mineral water represented as being "Bethesda Mineral Water," or the water dealt in or sold by the plaintiff, whether so represented by way of trade-mark, label or other simulated device. This is a part of the relief demanded in the complaint, and to which, upon the facts, we think she is entitled.

The law in relation to trade-marks has frequently been the subject of discussion in the courts; and it seems to be well

settled that the owner of any original trade-mark has an un-
doubted right to be protected in the exclusive use of all the
marks, forms or symbols that he may appropriate as designating
the true origin or ownership of the article or fabric to which
they are affixed; but he has no right to appropriate a sign or
mark which indicates the name or quality of the goods, and
which others may employ with equal truth for the same pur-
pose. *Amoskeag Manuf. Co. v. Spear*, 2 Sandf. S. C., 599;
*Coats v. Holbrook*, 2 Sandf. Ch., 586; *Congress Spring Co. v.
High Rock Spring Co.*, 45 N. Y., 291; *Canal Co. v. Clark*, 13
Wall., 311.   And the rules laid down in respect to an artificial
or manufactured article are said to apply to the proprietor-
ship of any peculiar natural product which a party may have
acquired with the avails of his industry, sagacity and enter-
prise; the owner or vendor of the one, equally with the owner
or vendor of the other, having a right to the exclusive use of
his mark employed in connection with the sale of the com-
modity.  FOLGER, J., in *Congress Spring Co. v. High Rock
Spring Co., supra*.  It is very obvious that this must be so
if the reason for the interference of the court is founded upon
the injury to the owner when his trade-mark is invaded, or
the fraud upon the public; for, whether the vendible com-
modity be natural or artificial, the purchaser has imposed
upon him an article that he never meant to buy, and the
owner "is robbed of the fruits of the reputation that he had
successfully labored to earn."  DUER, J., in *Amoskeag Manuf.
Co. v. Spear*.  The correctness of these principles was not
seriously questioned or controverted by the learned counsel on
either side, on the argument.   It only remains to determine
how they affect or control this case.

Notwithstanding the denial of the defendants, it is difficult
to believe that in advertising and selling the water of the
Glenn spring in the way it was advertised and sold, the pub-
lic were not in fact deceived, and had not reason to suppose,
when they purchased those waters, that they were really ob-

taining the waters of the plaintiff's spring. At all events, it seems a fair inference from all the facts, that the defendant *Glenn* attempted to avail himself of the benefit of the plaintiff's trade-mark, and to appropriate the good will of a business which the enterprise and care of the plaintiff had established. This was certainly calculated to injure the plaintiff and diminish the profits of her business. It is admitted that the Bethesda spring water had become widely known as a valuable and useful commodity or article of commerce, and had a high reputation as a remedial agent in a certain class of diseases. And it is impossible to believe that the defendant *Glenn*, who owned another spring at Waukesha, did not seek to avail himself of that reputation by the means he resorted to in advertising and selling the water of his own spring. What he did was directly calculated to induce persons to believe that in buying the water thus advertised they were obtaining that from the plaintiff's spring, which had an established reputation. There is an implied admission in the affidavit of *Mr. Glenn*, that, prior to the service of the injunctional order, he had advertised in circulars his spring as the "Glenn Bethesda Mineral Water of Waukesha," thus appropriating the word "Bethesda," which was really the trade-mark of the plaintiff. Under these circumstances, the case seems to come fully within the principles of the decision in *Congress Spring Co. v. High Rock Spring Co.*, *supra*, and cases of a kindred character, and must be ruled by them. It is true, in the Congress Spring case the names or initials of the successive proprietors of Congress Spring were upon the bottles containing the water, upon the corks of the bottles, and upon the boxes in which the bottles were packed for transportation. This method served to indicate both the origin and proprietorship of the water of Congress spring, while in the case before us the word "Bethesda" may only indicate the origin of the water. However this may be, it is sufficient to constitute it a trade-mark, within the doctrine of the adjudications.

Dunbar vs. Glenn and another.

The learned counsel for the defendants insisted that the word "Bethesda," as used by the plaintiff, denotes the kind, character, quality or utility of the waters of her spring, and therefore could not be a lawful trade-mark. But we do not understand that the plaintiff uses or applies the word in any such sense or for any such purpose. It will avail little to resort to the original meaning of the word "Bethesda" as defined by biblical writers. It is sufficient to say that the word, as used by the plaintiff, does not describe any quality of the water. It seems to have been adopted to indicate origin or ownership, and to have a name by which the water could be distinguished when bought and sold in the market. The plaintiff has a right to the exclusive use of the word, when employed as a trade-mark for such a purpose. The cases cited on the brief of defendants' counsel clearly recognize such a right. Where the trade-mark, in its original signification or by association, distinctively points to the origin or ownership of the article to which it is applied, it will be protected. But where it is a generic or geographical name, designating a city or district of country, or is merely descriptive of the article manufactured, and can be employed with truth by other manufacturers, it is not entitled to legal protection as a trade-mark. *Canal Co. v. Clark, supra; Brooklyn White Lead Co. v. Masury*, 25 Barb., 416; *Wolfe v. Goulard*, 18 How. Pr., 64; *Burke v. Cassin*, 45 Cal., 468; *Stokes v. Landgraff*, 17 Barb., 608; *Corwin v. Daly*, 7 Bosw., 222; *Caswell v. Davis*, 58 N. Y., 223; *Taylor v. Gillies*, 59 id., 331; *Choynski v. Cohen*, 39 Cal., 501; *Perry v. Truefitt*, 6 Beav., 66. But this case does not fall within any of the exceptions stated to the rule in the above cases. Here the plaintiff adopted and applied the name "Bethesda" to her spring to mark or distinguish the waters thereof in the market; and she has the right to its exclusive use. It is not intended to, nor does it, indicate the quality or constituents of the water, but rather its origin or ownership;

and is designed as a name for distinguishing the water, by which it may be bought and sold.

It follows from these views that the order of the circuit court dissolving the injunction must be reversed, and the cause remanded for further proceedings according to law.

*By the Court.* — So ordered.