### FRUIT GROWERS CO-OP. v. M. W. MILLER & CO. et al.
### Civil Action No. 3325.

District Court, E. D. Wisconsin.
Aug. 21, 1947.

Lougee Stedman of Sturgeon Bay, Wis., for plaintiff.

Robert P. Stebbins, of Green Bay, Wis., and S. L. Wheeler, of Milwaukee, Wis., for defendants.

DUFFY, District Judge.

This is an action for infringement of the trade-mark "Sturgeon Bay" registered under the Act of March 19, 1920, 15 U.S.C.A. § 121 et seq., and for unfair competition. Plaintiff is a cooperative association engaged principally in the business of packing, canning, and handling red sour cherries, and does business in various areas throughout the United States. Defendant M. W. Miller is the president, manager, principal stockholder, and guiding spirit of the two corporate defendants. The plaintiff and all defendants have their places of business at Sturgeon Bay, Door County, Wisconsin. Sturgeon Bay is the county seat and principal city in Door County.

Reynolds Preserving Company of Sturgeon Bay canned cherries in the year 1917, and sold same under a "Sturgeon Bay" label. Late in 1917 Reynolds sold its canning properties, including its rights to the name "Sturgeon Bay," to a predecessor of plaintiff. In 1918-1925, Reynolds delivered its cherries to plaintiff's predecessor. In 1925, Reynolds again went into the cherry canning business and thereafter used the name "Sturgeon Bay" and "Sturgeon Bay Cherries" on its labels, but the name "Sturgeon Bay" was always in a subordinate position and was not used as "Sturgeon Bay Brand."

From 1918 to 1925, plaintiff was the only packer using the name "Sturgeon Bay" on cherries. By 1923, in several areas, it had established a reputation for a quality product. From 1918 to 1930, plaintiff also used the name "Sturgeon Bay" on the highest quality crated fresh cherries. Throughout the years plaintiff has used, and still uses, the mark "Sturgeon Bay Brand" on from 65% to 85% of its canned and frozen cherries. During the past ten years, plaintiff's sales of canned cherries alone, under the "Sturgeon Bay Brand," has exceeded $4,450,000. In 1933, plaintiff took over the assets of Door County Fruit Growers Union, as well as Fruit Growers Canning Company, and among other assets was the trade-mark registration mentioned.

Defendant (meaning M. W. Miller) started selling fresh crated cherries in 1932, and in 1933 he acted as sales agent for Wisconsin Cherry Growers, of which plaintiff was a member. While defendant sold these cherries as "Sturgeon Bay" cherries, they were sold under "Wisconsin" and "Buck Shot" brand labels. In the contract between Miller and Wisconsin Cherry Growers, the phrase "Sturgeon Bay Cherries" was not used, but the phrase "Door County Area" was used. From 1934 to 1941 defendant sold fresh cherries and advertised them as "Sturgeon Bay" cherries. From 1935 to 1940 defendant purchased cherries from plaintiff in No. 10 cans and, to some of these, labels were applied bearing the words "Sturgeon Bay" in large letters, and at the bottom of the label, "Packed for M. W. Miller."

In 1941, defendant started selling pitted sugared cherries and although he advertised some of same as "Sturgeon Bay" cherries, such fact did not come to the attention of the plaintiff. In 1942, plaintiff first became aware of the use by defendant of the name "Sturgeon Bay Brand" on some canned black raspberries. Plaintiff promptly informed defendant that "Sturgeon Bay Brand" was plaintiff's trade-mark and asked assurance that the defendant would not again use the name on food products.

From the testimony it appears that in the minds of most of the consuming public who purchase canned or fresh cherries, "Sturgeon Bay" means an area in Wisconsin where a fine grade of cherry is grown. Others refer to this same area as "Door County." To some buyers of fruit in large quantities, the name "Sturgeon Bay" connected with cherries means the product of the plaintiff, but the average housewife and

consumer does not know the names of any of the processors of cherries in the Sturgeon Bay or Door County area: Many consumers do have in mind that cherries from that area have an excellent reputation.

Defendants raise the question of jurisdiction and claim that there is no showing that the individual defendant Miller was engaged in interstate commerce. There is no dispute but that the plaintiff and the defendant Sturgeon Bay Distributing Company were engaged in interstate commerce. Furthermore, defendant Miller so completely dominated the corporate defendants that it is impossible to segregate his acts as an individual from the acts of the two corporate defendants which he owned, managed and directed. Therefore, there is a sufficient showing that the defendants were engaged in interstate commerce. The registration of the trademark under the 1920 Act gives jurisdiction of the action regardless of diversity of citizenship or amount in controversy, both as to infringement and unfair competition. Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 305 U.S. 315, 59 S.Ct. 191, 83 L.Ed. 195.

Considering now the question of infringement of trade-mark, it is fundamental that no additional rights to the trade-mark are acquired by registration under the 1920 Act. Therefore we must consider whether plaintiff may adopt a geographical name which is descriptive of the place where the cherries are produced and thereby have a monopoly on the use of that name in connection with the sale of cherries. Although cherries are not produced within the city limits of Sturgeon Bay, yet in the minds of the general public Sturgeon Bay encompasses the surrounding area where the cherry orchards are located.

In Elgin National Watch Co. v. Illinois Watch Case Co., 179 U.S. 665, 673, 21 S.Ct. 270, 273, 45 L.Ed. 365, the court said: "And the general rule is thoroughly established, that words that do not in and of themselves indicate anything in the nature of origin, manufacture, or ownership, but are merely descriptive of the place where an article is manufactured or pro-duced, cannot be monopolized as a trademark. * * * Obviously, to hold that appellant had obtained the exclusive right to use the name 'Elgin' would be to disregard the doctrine characterized by Mr. Justice Strong in Delaware & H. Canal Co. v. Clark [13 Wall. 311, 20 L.Ed. 581], as sound doctrine, 'that no one can apply the name of a district of country to a well-known article of commerce, and obtain thereby such an exclusive right to the application as to prevent others inhabiting the district or dealing in similar articles coming from the district from truthfully using the same designation.' "

In Candee v. Deere, 54 Ill. 439, 5 Am. Rep. 125, the court held that there could be no trade-mark in the words "Moline plows" as Moline was the name of a city in which the plows were made. In the early Wisconsin case of Dunbar v. Glenn, 42 Wis. 118, at page 137, 24 Am.Rep. 395, the court said,: "Where the trade-mark, in its original signification or by association, distinctively points to the origin or ownership of the article to which it is applied, it will be protected. But where it is a generic or geographical name, designating a city or district of country, or is merely descriptive of the article manufactured, and can be employed with truth by other manufacturers, it is not entitled to legal protection as a trade-mark."

Of course, geographical names may acquire a secondary signification indicative not only of the place of production but the name of the producer and the excellence of the thing produced. French Republic v. Saratoga Vichy Spring Co., 191 U.S. 427, 24 S.Ct. 145, 48 L.Ed. 247. In the case at bar, some people in the trade and a few customers recognize "Sturgeon Bay Brand" as meaning the plaintiff and its product, but the proof does not establish sufficiently that the words "Sturgeon Bay" mean not only the area where the cherries were grown and processed but that they also have come to mean the plaintiff and its product. Therefore, defendants must prevail upon the question of validity of trademark.

On the question of unfair competition, defendants insist that plaintiff neither pleaded nor proved same. However, in the

first paragraph of the complaint plaintiff states that the action is brought "for infringement of trade-mark and unfair competition." In paragraphs 8 and 9, plaintiff alleges the good reputation of Sturgeon Bay cherries produced by plaintiff and the extensive sales thereof, and alleges the long and quiet use and enjoyment by the plaintiff of the mark, and charges that the defendants' use of the name "Sturgeon Bay" was such as to have deceived purchasers of cherries into believing that they were the products of the plaintiff. The situation is similar to that in Purity Cheese Co. v. Frank Ryser Co., D.C., 57 F.Supp. 102, 103, where this court stated: "Although the complaint deals almost entirely with claimed trade-mark infringement, a liberal construction of the pleading and giving every presumption to the pleader permits the conclusion that a cause of action for unfair competition is stated."

■ An allegation of fraud is unnecessary where proof discloses that the public has been deceived by the defendants passing off their goods for those of the plaintiff. Adam Hat Stores, Inc., v. Scherper, D.C., 45 F.Supp. 804, 806; Horlick's Malted Milk Corporation v. Horlick, D.C., 40 F. Supp. 501, 502.

The question then arises: Can the plaintiff maintain a cause of action for unfair competition where his claimed action for technical trade-mark infringement has gone down because the proof did not show a wide enough recognition of the geographical name as meaning the products of the plaintiff?

■ It has been held that unfair competition is distinguishable from infringement of a trade-mark in this: that it does not involve *necessarily* the question of exclusive right of another to the use of the name, symbol or device. A word may be purely generic or descriptive, and therefore not capable of becoming an arbitrary trade-mark, and yet there may be an unfair use of such word or symbol which will constitute unfair competition. G. W. Cole Co. v. American Cement & Oil Co., 7 Cir., 130 F. 703, 705.

■ The right to relief from unfair competition may arise from the misuse of words, marks or symbols which are free to everybody to use and are not subject to exclusive appropriation by anybody. The existence of this right of action for unfair competition depends upon a question of fact—whether what is done by the defendant tends to injure another unfairly. Nims on Unfair Competition and Trade-Marks, 3rd Ed., p. 3.

■ Keeping in mind that the action of unfair competition is the embodiment in law of the rule of the playgrounds —play fair (Nims on Unfair Competition and Trade-Marks, supra, p. 25), let us consider the following circumstances: The year 1945 was a poor cherry year in the Sturgeon Bay area. Defendant used a label, the most prominent words of which were "Sturgeon Bay" and "Cherries," and applied the same to canned cherries of an inferior quality processed in defendant's name by a vegetable cannery located in Green Bay, Wisconsin, which had no previous experience in canning fruits. This was the year when defendant's pack, all in shelf-sized cans, was given a substandard grade by government inspectors and, as a result, the U. S. Quartermaster Depot refused to purchase same for the Armed Forces, and defendant then sold same to the public. All of plaintiff's 1945 pack in shelf-sized cans was found by the same inspectors to be of standard grade, and likewise 80 per cent of plaintiff's pack in No. 10 cans. In order to protect the good reputation it had established for "Sturgeon Bay Brand" cherries, the plaintiff designed a new label and applied it to the No. 10 cans which had been found substandard. However, the defendant sold his substandard cherries under his usual label with the words "Sturgeon Bay" and "Cherries" predominant. A portion of defendant's sales of shelf-sized cans was in areas which had previously been sold by the plaintiff, but in 1945 plaintiff had none to sell as the Armed Forces had taken its entire output.

The processing of red sour pitted cherries requires considerable skill. A good, natural product can be easily spoiled by poor processing. Plaintiff and his predecessors have had the same superintendent in charge of their plant from 1917 to date and

have uniformly turned out a quality product.

In late 1945 or early 1946, a Miss Brown and a Mrs. Bingham purchased canned cherries packed by the defendant. They had been accustomed in years prior to 1945 to purchase Sturgeon Bay canned cherries packed by the plaintiff. Both of them believed when they made their purchases that they were buying cherries packed by the plaintiff. Miss Brown is the dietitian at the Wausau Memorial Hospital. In the past she had ordered Sturgeon Bay cherries by that name and in response had received cherries packed by the plaintiff. When the cherries were delivered in response to her order in late 1945, she did not closely examine the label but did see the large name "Sturgeon Bay" on them and assumed they were cherries packed by the plaintiff. Later on she discovered they were packed by the defendant. Mrs. Bingham had been shopping for canned fruits which at that time were a scarce item. In a self-serve grocery she discovered canned cherries on the shelf, and noticing the name "Sturgeon Bay" purchased same, believing that she was purchasing cherries which had been packed by the plaintiff. It was two or three weeks later when she opened one of the cans with a wall can-opener at which time she discovered that the cherries had been packed by the defendant.

The defendant was a latecomer into the field of selling canned and processed cherries. He well knew that the plaintiff had used the name "Sturgeon Bay Brand" as a designation of its cherries, and yet when defendant designed the cover of his 30-pound tin, Exhibit 3, he had the words "Sturgeon Bay" in large letters placed immediately over a cluster of six red cherries. The shape, the size and the location of the cherries are identical with the design on plaintiff's 30-pound-can cover, Exhibit 17, except that defendant omitted two green leaves from his design. However, on the labels which were attached to two smaller sizes of cans (Exhibits 1 and 2) the defendant did not bother to omit the green leaves, so that the cluster of cherries appearing immediately under the name "Sturgeon Bay," appearing in large letters, would give one making a casual inspection the impression that they were labels used by the plaintiff on its quality products.

It was no accident or coincidence that the cluster of cherries on defendant's labels and on his can covers were the same size and shape as on plaintiff's design and located immediately under the name "Sturgeon Bay" which appeared in large letters. It was a deliberate effort on defendant's part to receive the benefit of the good will which the plaintiff and its predecessors had built up during many years of business activity.

The defendants should not be enjoined from using the words "Sturgeon Bay" on their labels to designate their business location, and in view of the long use by Reynolds and others of the term "Sturgeon Bay Cherries" they should not be denied the privilege of using that term, but, if used, it must be in a subordinate position. A number of the labels of the Reynolds Preserving Company use the name "Sturgeon Bay Cherries," but no one of the public would be deceived in view of the comparatively small type in which those names appear.

A judgment for the plaintiff may be entered restraining all the defendants from the use of the name "Sturgeon Bay" in large letters upon their labels or can covers, and also from using the picture of the cluster of cherries such as has been used by the plaintiff. The judgment may provide that the letters of the words "Sturgeon Bay" appearing on any of defendants' labels shall not be more than one-third in size to the words "All Star" or other designation of a brand name of the defendants.

Plaintiff's counsel will prepare a draft of findings of fact and conclusions of law consistent with this opinion and submit same to defendants' counsel for suggestions or amendments prior to submission to the court.