AVENARIUS, Respondent, vs. KORNELY, Appellant.

*January 26—May 11, 1909.*

*Trade-marks and trade-names: Names subject to ownership: Infringement: Actions: Expiration of patent: Effect: Abandonment: Nature of right: Evidence: Foreign trade-marks: Registry in United States: Protection: What law governs: Laches.*

1. The exclusive right to use words, letters, or symbols to indicate merely the quality of goods to which they are affixed cannot be acquired, unless the primary object of the trade-mark be to indicate origin or ownership.

2. The rule that a name cannot be a trade-mark or trade-name only applies when the name is used to describe the kind or quality of the thing sold and not the article of a particular maker or seller.

3. A trade-mark which in its original signification or by association distinctly points to the origin or ownership of the article to which it is applied will be protected, while a generic or geographical name, designating a city or district or country, or merely descriptive of the article, and which may be employed with truth by others, is not entitled to legal protection as a trade-mark.

4. An inventor of a wood-preserving paint called it "Carbolineum," and either alone or with other indicia continuously affixed that word to the receptacle containing the product in which it was sold. It was a word coined by the inventor and unknown when first used, and was thereafter always used as the inventor's trade-mark to designate his invention, and not as descriptive of the article manufactured. *Held*, that such word was a valid trade-mark.

5. Newly coined words are, as a general rule, sustained as proper trade-marks, since such words, being generally meaningless, cannot be either descriptive or deceptive.

6. Where a product is manufactured and the compound is a secret invention, the inventor may coin a new name for his product by which it is to be known, and is entitled to protection of such trade-mark or trade-name against an objection that thereby the name became *publici juris.*

7. A valid trade-mark may consist of some novel device, arbitrary character, or fancy word applied without special meaning, which by use and repetition comes to serve the same purpose. Such words and devices indicate sufficiently the true source

and origin of the goods without particular addition of the name of the manufacturer or dealer.

8. Actions to restrain the infringement of trade-marks are based on the doctrine that the law will not allow one person to sell his own goods as and for the goods of another. This is to prevent not alone fraud upon private rights but upon the public as well.

[9. *It seems* that where one owning a newly patented product gives it a name, such name becomes *publici juris* on the expiration of the patent.]

10. Where a trade-mark antedated a patent covering the product to which the trade-mark was applied by about twelve years, the expiration of the patent in no way affects the trade-mark.

11. Evidence that a word was constantly used as a trade-name, that the owner applied for its registration in various foreign countries and was diligent in his efforts to protect it as his trade-name, and that he subsequently used his own name in connection with such word and registered the same in the United States Patent Office, sustains a finding that such owner never abandoned such word as a trade-name.

12. One is not confined to one form of his trade-mark.

13. Registration neither creates nor destroys rights in a trade-mark. Such rights are not created by act of Congress and do not depend upon it for their enforcement, but upon priority of appropriation.

14. An owner of an original trade-mark will be protected in the exclusive use thereof, and, to constitute an infringement, it is not necessary that every word of the trade-mark should be appropriated. It is sufficient that enough be taken to deceive the public in the purchase of the protected article.

15. In an action to enjoin the use of a foreign trade-mark it is immaterial whether the owner could or could not have registered it in foreign countries under their laws. The question is whether the claim to protection is in harmony with the law, written or unwritten, of this country.

16. One is to be protected in his trade-mark or trade-name against another who, with intent to deceive, has appropriated such trade-mark or trade-name for his own benefit and to the owner's damage, although there is no material difference between the products of each.

17. One is not guilty of laches in protecting his trade-mark who, claiming rights thereby, has always been diligent in his endeavors to protect it, and had applied for registration thereof in the United States before it had been used by any other person for any purpose.

TIMLIN, DODGE, and BARNES, JJ., dissent.

APPEAL from a judgment of the circuit court for Milwaukee county: WARREN D. TARRANT, Circuit Judge. *Affirmed.*

This action was brought to restrain the alleged unlawful use of the plaintiff's trade-mark or trade-name "Carbolineum." The court below sustained the plaintiff's claim and rendered an interlocutory judgment enjoining the defendant from selling his goods under the plaintiff's trade-mark or trade-name "Carbolineum" or any word in imitation thereof. The appeal in this action is from such interlocutory judgment. The court below found as follows:

(1) That said plaintiff is now, and was at all the times hereinafter mentioned, a resident and citizen of the German Empire.

(2) That on December 11, 1871, a treaty was concluded between the United States and the German Empire [17 U. S. Stats. at Large, 921], which treaty has been at all times hereinafter mentioned, and is now, in force between said countries, and which said treaty provides: "Art. XVII. With regard to the marks or labels of goods, or of their packages, and also with regard to patterns and marks of manufacture and trade, the citizens of Germany shall enjoy in the United States of America, and American citizens shall enjoy in Germany, the same protection as native citizens."

(3) That said plaintiff is engaged, and since the year 1876 has been continuously engaged, in the manufacture and sale of wood-preserving paint and liquids, to wit, a high distillate of coal tar, under the firm name and style of Gerbrueder Avenarios, or Avenarius Brothers.

(4) That during all said time said plaintiff has continuously called his said product by the name of "Carbolineum," and has continuously affixed said name, either alone or in connection with other words and indicia, to the cans, barrels, and receptacles containing the same, and still continues so to do, and during all said times has sold and marketed his said product under said name, and so marked with said name, in large quantities in Germany and in other European countries.

(5) That said word "Carbolineum" was coined and originated by said plaintiff in analogy to the two Latin words "carbo," meaning coal, and "oleum," meaning oil.

(6) That at the time said plaintiff so first used said word "Carbolineum" the same had not been used by any other person for any purpose and was wholly unknown.

(7) That in the year 1886 said plaintiff first shipped his said product under said name and so marked with said name to the United States, and has ever since said year sold and marketed the same under said name and so marked with said name in large quantities in said United States.

(8) That said plaintiff has widely advertised his said product by said name and designation of "Carbolineum" since the year 1876 in Europe and since the year 1886 in the United States, and that his said product has become widely and favorably known during said time in all said countries under said name and designation as a valuable and useful article of merchandise, and that said reputation and sale of his said product under said name and designation has been of great benefit and advantage to said plaintiff.

(9) That during all said time of plaintiff's said use of said word, both in said European countries and in the United States, said plaintiff has claimed and intended said word as his trade-mark, and as a specific name and designation for his said product, to indicate that the article to which the same was so applied and affixed was the manufacture of said plaintiff, and that said plaintiff has relied upon said name and designation to distinguish his said product with the public and to indicate its origin, and that his said product is so distinguished with the trade by said name and designation as thus indicating its origin.

(10) That, in accompanying said word "Carbolineum" with said other words and indicia upon the cans, barrels, and receptacles containing his said product, said plaintiff did not intend to abandon or surrender, and did not abandon or surrender, any of his claims or any of his rights to said word "Carbolineum" alone as his trade-mark or his intended trade-mark upon his said product.

(11) That on October 13, 1886, said plaintiff duly applied to the Patent Office of the United States for the registration of said word "Carbolineum," and that the same was pursuant to said application duly registered in said office on the 8th day of February, 1887, as his trade-mark for preservative liquids, as No. 14,048 of trade-marks; that on

April 19, 1889, said plaintiff applied to the Patent Office of the United States for the registration of the words "Carbolineum Avenarius," and that the same were, pursuant to said application, duly registered in said office on the 9th day of July, 1889, as his trade-mark for preserving paint, as No. 16,788 of trade-marks.

(12) That the word "Carbolineum" was first used in Germany, and under the then existing laws of that country it was not and could not become a trade-mark, and the plaintiff could not prevent competitors from using said word as a designation for their similar products.

(13) That the plaintiff procured a patent from the German Empire for a part of the process of manufacturing his said product.

(14) That since the year 1893 the defendant has been and continues to be engaged in the sale of wood-preserving paint and liquids, to wit, a high distillate of coal tar.

(15) That plaintiff has abandoned his contention that defendant's said product is inferior to that of plaintiff, but the court finds that said two products differ materially from each other.

(16) That the defendant has bought all of said wood-preserving paint and liquid which he has sold from his uncle, George Presser of Gau-Algesheim, who manufactured and sold the same to said defendant, and who in his correspondence with said defendant called the same "Carbolineum Presser," but who did not affix said word "Carbolineum" to the receptacles in which he sold the same to said defendant; that said defendant first called said preparation "Presser Preservatine," and continued until the year 1903 to use said name on part of the receptacles in which he sold the same; that said Presser requested said defendant to use the name "Carbolineum" for said preparation, and informed him that he had a right thus to use said word; that in 1900 or 1901 said defendant began to use the words "Original Carbolineum" with reference to said preparation on his stationery; that in 1902 said defendant called his said preparation "Preservatine, the Original Carbolineum," in a newspaper advertisement appearing in the Milwaukee Sentinel, and upon some advertising calendars, and began to use labels bearing said name upon pint and quart cans in which he sold

said preparation, but continued to label the larger receptacles in which he sold the same with the words "Presser Preservatine;" that in the latter part of 1903 said defendant began to use labels, stationery, and advertising pamphlets in which he called said preparation "Carbolineum Preservatine," and on said stationery announced that his said preparation was the "oldest on the market;" that late in 1903 or early in 1904 said defendant began extensively to advertise said preparation under said name of "Carbolineum Preservatine" in agricultural papers, poultry papers, and tanners' trade papers having large circulation, and in said advertisement announced that his said preparation was "thirty years on the market," and that defendant has continued to use said last-mentioned labels and stationery up to the time of trial in this action, and has continued up to said time extensively so to advertise his said preparation; that all said various uses of said word "Carbolineum" by said defendant have been without said plaintiff's consent; that there is no evidence that plaintiff or any one representing him knew before the year 1903 of said defendant's use of said word "Carbolineum."

(17) That a trade-mark for the aforesaid product of said George Presser was officially registered in the proper department of the German Empire on the 5th day of June, A. D. 1895, of which the following is a facsimile:

and that said trade-mark ever since has been and still is in full force and effect.

(18) That the acts of said defendant in thus using said word "Carbolineum." have been and are calculated to deceive, and do deceive, the users of wood-preserving paints and liquids into purchasing the product of said defendant as and for the product of said plaintiff in the belief that the same is the product of said plaintiff, and that said acts of said defendant were done with the intent and purpose of so deceiving said users of such products, and of thus obtaining the benefit of plaintiff's said advertising and of the reputation of his said product and the good will of his said business.

(19) That said defendant's said use of said word "Carbolineum" has been repeated and continuous and has damaged said plaintiff.

And as conclusions of law the court found:

'(1) That said word "Carbolineum" denotes origin and constitutes the trade-mark of said plaintiff.

(2) That said use of said word "Carbolineum" by said defendant constitutes an infringement of plaintiff's said trade-mark and upon his rights under said trade-mark.

(3) That plaintiff has sustained damages as a result of said infringement by said defendant.

(4) That plaintiff is entitled to the relief demanded in his complaint.

(5) That all patents obtained by said plaintiff in respect to his said product have expired.

The defendant excepted to the findings and to the refusal to find as requested.

*C. M. Scanlan* and *L. C. Wheeler,* for the appellant, contended, *inter alia,* that the word "Carbolineum" could not be a lawful trade-mark for the reason that it is a descriptive word. *Linoleum Mfg. Co. v. Nairn,* L. R. 7 Ch. D. 834; *Rex v. Cruttenden,* 10 Ont. 80; *Christy v. Tipper,* [1905] 1 Ch. 1; *In re Chesebrough's Trade-mark,* [1902] 2 Ch. 1, 9, 14; Bryan, Petroleum and Nat. Gas, 9–12; *Ex parte Evans,* 96 O. G. 425; 107 O. G. 542; *Heide v. Wallace,* 135 Fed. 346; 11 O. G. 1062; 100 O. G. 2603; *Ex parte Mitchell,* 113 O. G. 1970; *Worden v. Cal. F. S. Co.* 102 O. G. 623; 21 Pat., D. & T. Cas. 569; 133 O. G. 232; 132 O.

G. 1073; 12 O. G. 939; 97 O. G. 749; *Fuller v. Huff,* 99 Fed. 439; 24 Pat., D. & T. Cas. 688; 18 Pat., D. & T. Cas. 34; 100 O. G. 1330; 100 O. G. 1976; 95 O. G. 229; 99 O. G. 2101; 99 O. G. 2321; *Sterling R. Co. v. Gorey,* 110 Fed. 372; *Searle & H. Co. v. Warner,* 112 Fed. 674; *Lamont v. Leedy,* 88 Fed. 72; *Ex parte Crescent Mfg. Co.* 97 O. G. 750. The fact that a word is misspelled does not make it a fancy word or save it from being descriptive. 24 O. G. 899; Hopkins, Trade-marks, 85; *Ex parte Hutchins,* 100 O. G. 1330; 133 O. G. 1935; 133 O. G. 231; 110 O. G. 601; 95 O. G. 1452; 132 O. G. 844; *Barrett C. Co. v. Stern,* 176 N. Y. 27; 100 O. G. 682; 97 O. G. 749; 100 O. G. 1976; 85 O. G. 453. Mutilating a word, either by leaving out letters or syllables or putting in "extra" letters or syllables, does not make it nondescriptive when, if correctly spelled, it would be descriptive. 108 O. G. 289; 20 Pat., D. & T. Cas. 337; 16 Pat., D. & T. Cas. 173. Neither does the fact that a word is in a foreign language take it out of descriptive words. Hesseltine, Trade-marks, 50; Hopkins, Trade-marks, 87–95, 114, 115; 102 O. G. 465; *Meaby v. Triticine,* 15 Pat., D. & T. Cas. 1; 86 O. G. 181; 21 Pat., D. & T. Cas. 576; 22 id. (1905) 43; *Warwich T. Co. v. Urban,* 21 Pat., D. & T. Cas. 240; 100 O. G. 450; *Dadirrian v. Yacubian,* 98 Fed. 872, 873; *Rex v. Cruttenden,* 10 Ont. 80; *Moore v. Auwell,* 158 Fed. 462; Hopkins, Trade-marks, 304, 305. The word "Carbolineum" could not be lawfully used as a trade-mark, because whenever any new thing has been invented, devised, or in any wise brought to the attention of mankind, it must be given a name, and that name may be used by everybody and cannot be a trade-mark. Hopkins, Trade-marks, 107, 111; Hesseltine, Trade-marks, 46; *Linoleum Mfg. Co. v. Nairn,* L. R. 7 Ch. D. 834; *Waterman v. Ayres,* L. R. 39 Ch. D. 29; *Rex v. Cruttenden,* 10 Ont. 80; *Leclanche B. Co. v. Western E. Co.* 23 Fed. 276; *Hostetter v. Fries,* 17 Fed. 620; *Dadirrian v. Yacubian,* 98

Fed. 872. The word "Carbolineum" could not be lawfully used as a trade-mark, since it was a word in common use prior to and at the time it was registered in 1886 and thus designated the article either by description, being its name, or expressing any quality or use of it. Hopkins, Trademarks, 107, 244; 20 Pat., D. & T. Cas. 450; 17 Pat., D. & T. Cas. 486; *Ex parte Ams,* 23 O. G. 344; *French Republic v. Saratoga V. S. Co.* 191 U. S. 427; 107 O. G. 2238; *B. B. Hill Mfg. Co. v. Sawyer-Boss Mfg. Co.* 118 Fed. 1014, 112 Fed. 144; *Powell v. Birmingham V. B. Co.* [1894] A. C. 8, 11; *Singer Mfg. Co. v. June Mfg. Co.* 163 U. S. 169; *Holzapfel's C. Co. v. Rahtjen's Am. C. Co.* 183 U. S. 1; *Candee v. Deere,* 54 Ill. 439; 19 Pat., D. & T. Cas. 418. The word "Carbolineum" could not be a lawful trade-mark because it is generic. *In re Graham,* Dec. of Comm'r of Pat. (1872) 252; *Pratt Mfg. Co. v. Berry,* 136 U. S. 647; *Bourne v. Swan,* 20 Pat., D. & T. Cas. 105; 19 Pat., D. & T. Cas. 422. The word "Carbolineum" could not be lawfully used as a trade-mark because it was the name of a patented article and its use as a trade-mark would give a monopoly on the article after the expiration of the patent. *Singer Mfg. Co. v. June Mfg. Co.* 163 U. S. 169; *Ex parte Velvril Co.* 84 O. G. 807; *Tucker Mfg. Co. v. Boyington,* Dec. of Comm'r of Pat. (1876) 313; *Wilcox & G. S. M. Co. v. The Gibbens Frame,* 17 Fed. 623; *Ex parte Hall,* 98 O. G. 2174; *Chalmers K. Co. v. Columbia M. K. Co.* 160 Fed. 1013; *British V. C. Co. v. New V. C. Co.* [1907] 2 Ch. D. 312, 323, 324; 100 O. G. 450; 18 Pat., D. & T. Cas. 191. The court erred in finding that plaintiff did not abandon his claim or rights to the word "Carbolineum" alone as his trade-mark. *Pickard v. Sears,* 6 Ad. & E. 469; Bigelow, Estoppel, 560, 620; *State v. Wertzel,* 62 Wis. 184; *DeBussche v. Alt,* L. R. 8 Ch. D. 286; 1 Cyc. 630; Hopkins, Trade-marks, 46, 183, 320, 321, 325, 450, 454; *Gem C. Co. v. Leach,* 114 O. G. 2089; *Pittsburgh C. S. Co. v. Diamond S. Co.* 85 Fed.

637; subd. 3, sec. 2656, Stats. (1898); *U. S. v. Beebee,* 17 Fed. 36; *Likens v. Likens,* 136 Wis. 321, 117 N. W. 799; *Mexican Nat. R. Co. v. Jackson,* 89 Tex. 107; Hesseltine, Trade-marks, 108, 284–287.  The court erred in refusing to find that the government of Austria-Hungary canceled the word "Carbolineum" as a trade-mark because it was descriptive and in common use as the name of a commodity. Treaty with Austria-Hungary and Germany, 2 O. G. 418; Austro-Hungarian Trade-mark Law, 52 O. G. 1539; 59 O. G. 1611; German Registration of Trade-marks, 31 O. G. 1447; 71 O. G. 145; Hopkins, Trade-marks, 446, 459, Trade-mark Law of U. S. (1881), sec. 5; Id. 722, Wisconsin Trade-mark Laws; 22 Cyc. 1744; *Ex parte Circle Mfg. Co.* 98 O. G. 2365; *Columbia W. P. Co. v. Columbia E. S. R. L. & P. Co.* 172 U. S. 475; *Bonacum v. Murphy,* 71 Neb. 463, 98 N. W. 1030, 1037; *Disconto Gesellschaft v. Umbreit,* 127 Wis. 651; Devlin, Treaties, secs. 2, 168, 214–219; *In re Chesebrough's Trade-mark,* [1902] 2 Ch. D. 1, 9–14. The court erred in failing to find as a conclusion of law that, as Presser had registered a trade-mark in Germany, he had the right to sell his product under that mark to the world. *Schoerken v. Swift & C. & B. Co.* 7 Fed. 469; *Apollinaris Co. v. Scherer,* 23 Blatch. 459; *Dover S. Co. v. Fellows,* 163 Mass. 191; *Seigert v. Abbott,* 25 N. Y. Supp. 590; *Ex parte Bishop,* 107 O. G. 1973; *Shallenberger v. Pennsylvania,* 171 U. S. 1; *Plumley v. Massachusetts,* 155 U. S. 461; *Disconto Gesellschaft v. Umbreit,* 208 U. S. 570; *McMillan v. Spider Lake S. M. & L. Co.* 115 Wis. 332.

For the respondent there was a brief by *Otto Dorner,* attorney, and *Theodore Kronshage,* of counsel, and oral argument by *Mr. Dorner.*  They contended, *inter alia,* that the word "Carbolineum" was not descriptive.  Paul, Trademarks, § 49; *Burnett v. Phalon,* 9 Bosw. 192; *Keasbey v. Brooklyn C. Works,* 142 N. Y. 467, 37 N. E. 476; *Pa. S. Mfg. Co. v. Myers,* 79 Fed. 87, 89; *Electro-Silicon Co. v.*

*Hazard,* 29 Hun, 369; *Electro-Silicon Co. v. Trask,* 59 How.
Pr. 189; *Electro-Silicon Co. v. Levy,* 59 How. Pr. 469;
*Leonard v. White's G. L. Co.* 38 Fed. 922. The distinction
should be made between words which are the legitimate ac-
cepted terms in describing the qualities, ingredients, or char-
acteristics of an article, and words which are but inferentially
or remotely descriptive. In the one case the words will be
understood by the public as indicating some peculiarity of
the article itself, and not as pointing out origin or owner-
ship; in the other they will be regarded rather in the light
of words fancifully and arbitrarily used, and consequently
serve the purpose of a trade-mark. *Ex parte Heyman,* 18
O. G. 922; *N. K. Fairbank Co. v. Central L. Co.* 64 Fed.
133; *In re "Bovril" Trade-mark,* 65 L. J. Ch. 715, [1896]
2 Ch. 600; *M. J. Breitenbach Co. v. Spangenberg,* 131 Fed.
160; *Sterling R. Co. v. Gorey,* 110 Fed. 372; *Wells & R.
Co. v. Siegel, C. & Co.* 106 Fed. 77; *In re Francis,* Cox,
Man. of Trade-mark Cases, No. 375; Dec. U. S. Pat.
Comm'r (1871), 283; *Globe-Wernicke Co. v. Brown,* 121
Fed. 185; *Noel v. Ellis,* 89 Fed. 978; *Selchow v. Baker,* 64
How. Pr. 212; *Potter D. & C. Corp. v. Miller,* 75 Fed. 656;
*Glen Cove Mfg. Co. v. Ludeling,* 22 Fed. 823; *Radam v.
Shaw,* 28 Ont. 612; *Waterman v. Shipman,* 130 N. Y. 301;
*Price B. P. Co. v. Fyfe,* 45 Fed. 799; *Northwestern Con.
M. Co. v. Mauser,* 162 Fed. 1004; *Royal B. P. Co. v. Ray-
mond,* 70 Fed. 376, 85 Fed. 231; *Royal B. P. Co. v. Sher-
rill,* 59 How. Pr. 17; *Royal B. P. Co. v. Royal,* 122 Fed.
337; *Insurance O. T. Co. v. Scott,* 33 La. Ann. 946; *In re
Glines,* 8 O. G. 435; *Listman M. Co. v. Wm. Listman M. Co.*
88 Wis. 334; *Am. G. Co. v. Sloan,* 68 Fed. 539; *Tetlow v.
Tappan,* 85 Fed. 774; *Bailly v. Nashawannuk Mfg. Co.*
10 N. Y. Supp. 224; *Stoughton v. Woodard,* 39 Fed. 902;
*Hiram Holt Mfg. Co. v. Wadsworth,* 41 Fed. 34; *O'Rourke v.
Central City S. Co.* 26 Fed. 576; *Schendel v. Silver,* 18 N. Y.
Supp. 1; *Colgate v. Adams,* 88 Fed. 899, 900; *Centaur Co.*

*v. Killenberger,* 87 Fed. 725; *Centaur Co. v. Robinson,* 91 Fed. 889; *Centaur Co. v. Neathery,* 91 Fed. 891; *Centaur Co. v. Hughes Bros. Mfg. Co.* 91 Fed. 901; *Centaur Co. v. Link,* 62 N. J. Eq. 147, 49 Atl. 828; *Battle v. Finlay,* 45 Fed. 796; *Arthur v. Howard,* 19 Pa. Co. Ct. Rep. 81; *Sterling R. Co. v. Eureka C. & Mfg. Co.* 70 Fed. 704, 80 Fed. 105; *Rawlinson v. Brainard & A. Co.* 59 N. Y. Supp. 880, 28 Misc. 287; *Celluloid Mfg. Co. v. Cellonite Mfg. Co.* 32 Fed. 94; *Celluloid Mfg. Co. v. Read,* 47 Fed. 712; *Reddaway v. Banham,* 25 Eng. Rul. Cas. 193; *Nat. B. Co. v. Baker,* 95 Fed. 135; *Williams v. Mitchell,* 106 Fed. 168; *Ludington N. Co. v. Leonard,* 119 Fed. 937; *Social R. Asso. v. Howard,* 60 Fed. 270; *Lockwood v. Bostwick,* 2 Daly, 521; *Stern v. Barrett C. Co.* 61 N. Y. Supp. 221; *Smith v. Sixbury,* 25 Hun, 232; *Atlantic M. Co. v. Robinson,* 20 Fed. 217; *Am. F. C. Co. v. De Lee,* 67 Fed. 329; *Cohn v. Reynolds,* 57 N. Y. Supp. 469; *Volger v. Force,* 71 N. Y. Supp. 209; *Little v. Kellam,* 100 Fed. 353; *N. K. Fairbank Co. v. Luckel K. & C. S. Co.* 102 Fed. 327; *McLoughlin v. Singer,* 53 N. Y. Supp. 342; *Petrolia Mfg. Co. v. Bell & B. S. Co.* 97 Fed. 781; *Weinstock v. Marks,* 109 Cal. 529; *Crawford v. Lans,* 60 N. Y. Supp. 387; *Roberts v. Sheldon,* 8 Biss. 398; *Fulton v. Sellers,* 4 Brewst. 42; *Rillet v. Carlier,* 11 Abb. Pr. n. s. 186; *Kerry v. Toupin,* 60 Fed. 272; *Huwer v. Dannenhoffer,* 82 N. Y. 499; *New Home S. M. Co. v. Bloomingdale,* 59 Fed. 284; *George v. Smith,* 52 Fed. 830. One is entitled to have several forms of his trade-mark or several trade-marks upon the same goods. The addition or absence of his name does not change the mark. A trader may have one mark for the European market and another mark for the United States. *Morrison v. Case,* 9 Blatchf. 548; 2 O. G. 544; Cox, Man. of Trade-mark Cases, Nos. 226, 394, 501, 675; *In re Weaver,* 10 O. G. 1; *Hier v. Abrahams,* 82 N. Y. 519, 524; *Braham v. Bustard,* 1 H. & M. 447; 9 L. J. n. s. 199, 2 New Rep. 572; *Ford v. Foster,* L. R.

7 Ch. 611, 616, 27 L. T. N. s. 219, 41 L. J. Ch. 682; *Harrison v. Taylor,* 11 Jur. N. s. 408; *Johnson v. Bauer,* 82 Fed. 662, 27 C. C. A. 374. If there are several parts to one trade-mark the owner will be protected though only one of the parts be imitated, if the imitation is such as to deceive purchasers. *Saxlehner v. Eisner,* 179 U. S. 19, 33; *Hostetter v. Vowinkle,* 1 Dill. 329; *Am. G. P. Asso. v. Grocer P. Co.* 25 Hun, 398; *Shaver v. Shaver,* 54 Iowa, 208; *Cahn v. Gottschalk,* 2 N. Y. Supp. 13; *Ford v. Foster,* L. R. 7 Ch. 611. The fact that a word has been extensively or generally used as the popular name of the article will not dedicate it to the public or deprive the owner of his exclusive rights. Paul, Trade-marks, §§ 39, 114; *Celluloid Mfg. Co. v. Cellonite Mfg. Co.* 32 Fed. 94; *Celluloid Mfg. Co. v. Read,* 47 Fed. 712; *Selchow v. Baker,* 93 N. Y. 59; *Burton v. Stratton,* 12 Fed. 696; *Schendel v. Silver,* 63 Hun, 330. Plaintiff by registering the words "Carbolineum Avenarius" in the United States did not abandon the use of the word "Carbolineum" as his trade-mark, and the date stated in his application for registration is conclusively the date at which he first used his mark. *Saxlehner v. Eisner,* 179 U. S. 19, 32, 88 Fed. 61; *Kohler Mfg. Co. v. Beeshore,* 59 Fed. 572, 8 C. C. A. 215; *Ex parte Listman M. Co.* 119 O. G. 340; *Gem C. Co. v. Leach,* 114 O. G. 2089; *Canepa v. Boehm,* 117 O. G. 2089; *Hyman v. Solis C. Co.* 4 Colo. App. 475, 36 Pac. 444; *Ex parte Standard U. C. Co.* 119 O. G. 1925; *Ex parte Carborundum Co.* 118 O. G. 2250; 26 Am. & Eng. Ency. of Law (2d ed.) 367; *Leschen v. Broderick,* 123 Fed. 149. A copy of a foreign judgment should be authenticated by the custodian of the original. His character as custodian and his signature should be authenticated by the judge of the court whose records he has in custody, under the seal of the court. This seal and signature should be certified under the great seal of state by the custodian of the great seal. 2 Black, Judgments, § 847; *Church v. Hubbart,* 2 Cranch,

187, 2 L. Ed. 249; *Lazier v. Westcott,* 26 N. Y. 146, 82 Am. Dec. 404; *Vandervoort v. Smith,* 2 Caines, 155; *Thompson v. Mason,* 4 Ill. App. 452; 1 Greenl. Ev. § 514; *Gunn v. Peakes,* 36 Minn. 177; *Spaulding v. Vincent,* 24 Vt. 501. The United States courts, while they take judicial notice of foreign nations and their great seals of state, do not notice inferior departments and courts nor the officers and seals thereof. *Shoerken v. Swift,* 19 Blatchf. 209; *Beach v. Workman,* 20 N. H. 379; *Griswold v. Pitcairn,* 2 Conn. 85; *De Sobry v. Laistre,* 2 H. & J. 191, 3 Am. Dec. 535; *Comm. v. Snowden,* 1 Brewst. 218; *Delafield v. Hand,* 3 Johns. 310; *Berkery v. Reilly,* 82 Mich. 160.

KERWIN, J.    The findings of the trial court above set out give a sufficient statement of the material facts in the case. Findings 8, 10, 13, 15, 18, and 19 are attacked for want of evidence to support them.    We think the findings challenged are well supported by the evidence and shall spend no time upon that point.    It is also claimed that the ninth finding is inconsistent, since it finds that the word "Carbolineum" was intended as a trade-mark and also a specific name and designation for a commodity, and that the word cannot serve the double purpose of a trade-name and also the name of the compound.    It is not easy to reconcile the authorities upon the point, some cases holding that, when a new compound is discovered and christened and given a name, the name cannot also be appropriated as a trade-mark, but the cases appear to turn on whether the word denotes origin or ownership or is merely descriptive.    The exclusive right to use words, letters, or symbols to indicate merely the quality of goods to which they are affixed cannot be acquired.    But the rule seems to be otherwise if the primary object of the trade-mark 'be to indicate origin or ownership.    *Canal Co. v. Clark,* 80 U. S. 311; *Lawrence Mfg. Co. v. Tenn. Mfg. Co.* 138 U. S. 537, 11 Sup. Ct. 396; *W. R. Lynn S. Co. v. Auburn-Lynn S. Co.* 100 Me. 461, 62 Atl. 499; *Marshall v. Pinkham,* 52

Wis. 572, 9 N. W. 615.  So the doctrine that a name cannot be a trade-mark or trade-name only applies when the name is used to describe the kind or quality of the thing sold and not the article of a particular maker or seller.  This doctrine seems to be recognized in the cases cited by appellant.  In *Canal Co. v. Clark, supra,* it was held that where one mined coal in the Lackawanna Valley, Pennsylvania, and his coal has become known as "Lackawanna coal," others who come in afterwards and mine coal in another part of the valley cannot be enjoined from calling their coal "Lackawanna coal," it being in fact and in its generic character properly so designated; and that because the complainants had not coined the word "Lackawanna," but found it a settled and known appellation of the district in which their coal deposits and those of others were situated, and not applying to any manufacture of theirs, but to that portion of the coal of the valley in which they mined and marketed it, and differing neither in nature or quality from all other coal of the same region, the word could not be appropriated.  The court said, page 323:

"Hence the trade-mark must either by itself or by association point distinctively to the origin or ownership of the article to which it is applied.  The reason of this is that, unless it does, neither can he who first adopted it be injured by any appropriation or imitation of it by others nor can the public be deceived.  The first appropriation of a name or device pointing to his ownership, or which, by being associated with articles of trade, has acquired an understood reference to the originator or manufacturer of the articles, is injured whenever another adopts the same name or device for similar articles, because such adoption is in effect representing falsely that the productions of the latter are those of the former."

In *Manufacturing Co. v. Trainer,* 101 U. S. 51, 53, the court said:

"The general doctrines of the law as to trade-marks, the symbols or signs which may be used to designate products of a particular manufacture, and the protection which the courts

will afford to those who originally appropriated them, are not controverted. Every one is at liberty to affix to a product of his own manufacture any symbol or device, not previously appropriated, which will distinguish it from articles of the same general nature manufactured or sold by others, and thus secure to himself the benefits of increased sale by reason of any peculiar excellence he may have given to it."

In *Candee, S. & Co. v. Deere & Co.* 54 Ill. 439, the question was whether one manufacturer of plows at Moline, Illinois, could appropriate as his own, to the exclusion of all other manufacturers at the same place, the name of the place, and thus prevent other manufacturers from designating their manufacture as of the place where they are actually made; and it is said the cases do not go to that extent. It is further said in the opinion that the words "Moline, Ill.," had acquired a generic meaning, and one manufacturer at Moline had the same right to use them that any other manufacturer there had.

In *Royal B. P. Co. v. Sherrell*, 93 N. Y. 331, it was held that the word "Royal," as indicating quality or grade, could not be appropriated as a trade-mark, and it was said:

"The right to use a word or name as a trade-mark is the right which a person has to use a certain mark or name for articles which he has manufactured so that he may prevent another person from using it, because the mark or name denotes that articles so marked or named were manufactured by a certain person, and no one can have the right to put the same name or mark upon his goods and thus represent them to have been manufactured by the person whose mark it is. Per Sir V. Page-Wood, V. C., in *Collins Co. v. Cowen*, 3 K. & J. 428. But there can be no exclusive right to the use of words or marks which have no relation to the origin or ownership of the goods and are only meant to indicate their quality or grade."

In *Beadleston & Woerz v. Cooke B. Co.* 74 Fed. 229, the majority of the court held that the word "Imperial" was a designation of quality in the connection used and therefore

could not be appropriated as a trade-name, although the court observes that the word is close to the border line between terms that signify quality and those that do not. There is a strong dissent from the proposition that the word is descriptive or designates quality.

In *Chaffee Mfg. Co. v. Selchow,* 131 Fed. 543, it was held that the word "Flinch" was generic and known to the public and therefore was not the subject of a trade-mark, citing Browne, Trade-marks, §§ 87–91; Paul, Trade-marks, § 35. The court said, pages 545, 546:

"If chess or golf or whist were now invented and named, could any manufacturer or vendor of the implements with which such games are played obtain a trade-mark in their names by selling such implements put up in boxes marked with the names of the games? He of course could adopt a trade-mark to distinguish the chessmen or the playing cards or the golf clubs which he made from those made by others, but I think he could not acquire a trade-mark in the names of the games by simply selling the games after they had become known to the public under such names."

In *Singer Mfg. Co. v. June Mfg. Co.* 163 U. S. 169, 16 Sup. Ct. 1002, the question arose upon the expiration of a patent during the existence of which the word "Singer" as used to indicate style of the machine rather than as solely indicating the origin of manufacture had become public and constituted the generic description. It was held that at the expiration of the patent the right to make the patented article and to use the generic name passed to the public with the dedication resulting from the expiration of the patent.

In *Holzapfel's C. Co. v. Rah'tjen's A. C. Co.* 183 U. S. 1, 22 Sup. Ct. 6, the right to manufacture the compound had become public, and it was held that the name by which it was known likewise became public. It is said in the opinion that there was no attempt to pawn off the composition of one for the composition of another, and no pretense of deception as to the person who in fact manufactured, and that the prin-

ciples involved in *Singer Mfg. Co. v. June Mfg. Co., supra,* apply.

Under the claim of appellant that a generic name or a name merely descriptive of an article of trade or its qualities or characteristics cannot be employed as a trade-mark and entitled to protection, a long list of authorities is cited as to what words have been held descriptive in the sense that they cannot be appropriated as trade-marks. We shall not attempt to review the numerous cases cited by appellant upon this point. We believe it would be difficult, if not impossible, to reconcile all the authorities upon the subject. The general rule has often been stated, but the difficulty arises in applying it to the particular case. This court has stated the general rule as follows:

"It has often been decided that words which are merely descriptive of the kind, nature, style, character, or quality of the goods or articles sold cannot be exclusively appropriated and protected as a trade-mark. . . . It seems to be the office of a trade-mark to point out the true source, origin, or ownership of the goods to which the mark is applied, or to point out and designate a dealer's place of business, distinguishing it from the business locality of other dealers." *Marshall v. Pinkham,* 52 Wis. 572, 578, 580, 9 N. W. 617, 618.

And in *Dunbar v. Glenn,* 42 Wis. 118, 137:

"Where the trade-mark in its original signification or by association distinctively points to the origin or ownership of the article to which it is applied, it will be protected. But where it is a generic or geographical name, designating a city or district or country, or is merely descriptive of the article manufactured, and can be employed with truth by other manufacturers, it is not entitled to legal protection as a trademark."

That the word "Carbolineum" as applied to the facts in this case could be appropriated as a trade-mark we think is well supported by authority. The name was applied by the plaintiff in 1876 to a compound of his own invention,

namely, a wood-preserving paint and liquids composed of a
high distillate of coal tar, which he called "Carbolineum."
During all the time since 1876 he has continuously called his
product by the name of "Carbolineum," and affixed such
name either alone or in connection with other indicia to the
receptacles containing the same and sold the product under
said name in European countries, and that the word "Car-
bolineum" was coined and originated by the plaintiff and
was wholly unknown when first used by him, and has always
been used by him as his trade-mark to designate his inven-
tion.    Such arbitrary word newly coined and adopted by
plaintiff to distinguish his production from that of others,
and not merely descriptive of the article manufactured, is a
valid trade-mark.    *Dunbar v. Glenn,* 42 Wis. 118; *Marshall
v. Pinkham,* 52 Wis. 572, 9 N. W. 615; *Fish Bros. W. Co.
v. La Belle W. Works,* 82 Wis. 546, 52 N. W. 595; *Listman
M. Co. v. Wm. Listman M. Co.* 88 Wis. 334, 60 N. W. 261;
*W. R. Lynn S. Co. v. Auburn-Lynn S. Co.* 100 Me. 461, 62
Atl. 499; Paul, Trade-marks, § 49; *Burnett v. Phalon,* 9
Bosw. 192; *Keasbey v. Brooklyn C. Works,* 142 N. Y. 467,
37 N. E. 476; *Pennsylvania S. Mfg. Co. v. Myers,* 79 Fed.
87; *N. K. Fairbank Co. v. Central L. Co.* 64 Fed. 133;
*Leonard v. White's G. L. Co.* 38 Fed. 922; *Potter D. & C.
Corp. v. Miller,* 75 Fed. 656; *Northwestern C. M. Co. v.
Mauser & C.* 162 Fed. 1004; *Nat. B. Co. v. Baker,* 95 Fed.
135.                                                          ·

An examination of the foregoing cases and many others
which might be cited will clearly show that the word "Car-
bolineum" is not so descriptive of the quality of plaintiff's
compound as to make it obnoxious to the rule forbidding the
use of descriptive words as trade-marks or trade-names.
Newly coined words have been generally sustained as proper
trade-marks, because such words, being meaningless, cannot
be either descriptive or deceptive.    In *W. R. Lynn S. Co. v.
Auburn-Lynn S. Co.* 100 Me. 461, 62 Atl. 499, 960, the

plaintiff was held entitled to the exclusive use of the name "Auburn-Lynn Shoes." In *Le Page Co. v. Russia C. Co.* 51 Fed. 941, it is said:

"It is equitable that a manufacturer who has given reputation to any article should have the privilege of realizing the fruits of his labors by transmitting his business and establishment with the reputation which has attached to them on his decease to his legatees or executors, or during his lifetime to purchasers; and it is also in accordance with the principles of law and justice to the community that any trade-mark, including a surname, may be sold with the business or the establishment to which it is incident, because, while it may be that individual efforts give them their value at the outset, yet afterwards this is ordinarily made permanent as a part of the entire organization or as appurtenant to the locality in which the business is established, and thenceforward depends less on the individual efforts of the originator than on the combined result of all which he created."

The point that, when the plaintiff gave his product a name and it was a new product and known by no other name, the name became *publici juris,* is not sustained by the great weight of authority. Some cases, it is true, support this idea. But where a product is manufactured and the compound is a secret invention, as in this case, the inventor may coin a new name for his product by which it is to be known, and he is entitled to protection of such name as his trademark or trade-name. The plaintiff's compound of anthracine oil is one of the products included in the general designation. It is the plaintiff's product—his own secret compound. Anthracine oil is the general name for the product, but the plaintiff's manufacture of this general product invented by himself by a secret process is his manufacture, and his trade-name is entitled to protection. The purpose of the trademark is to give the plaintiff's special invention a distinctive name for his anthracine oil to distinguish his manufacture and point to its origin. The court found that the plaintiff constructed the word to make his goods known by the name

"Carbolineum" and used the word as a trade-mark.   Reference to a few of the many cases upholding words as proper trade-marks will suffice: "Uneeda" as applied to a biscuit (*Nat. B. Co. v. Baker,* 95 Fed. 135); "Cuticura" as a trade-mark for toilet soap (*Potter D. & C. Corp. v. Miller,* 75 Fed. 656); "Valvoline" for lubricating oil (*Leonard v. White's G. L. Co.* 38 Fed. 922); "Cottolene" designating a substitute for lard composed of cotton-seed oil (*N. K. Fairbank Co. v. Central L. Co.* 64 Fed. 133); "Saponifier" used in soap making (*Pennsylvania S. Mfg. Co. v. Myers,* 79 Fed. 87); "Bromo-Caffeine" as name of a chemical compound (*Keasbey v. Brooklyn C. Works,* 142 N. Y. 467, 37 N. E. 476); "Auburn-Lynn" shoes (*W. R. Lynn S. Co. v. Auburn-Lynn S. Co.* 100 Me. 461, 62 Atl. 499).   This court said in *Listman M. Co. v. Wm. Listman M. Co.* 88 Wis. 334, 340, 60 N. W. 262:

"But a valid trade-mark may consist of some novel device, arbitrary character, or fancy word applied without special meaning, which by use and reputation comes to serve the same purpose.   Such words and devices are held to indicate sufficiently the true source and origin of the goods without particular addition of the name of the manufacturer or dealer."

In *Dunbar v. Glenn,* 42 Wis. 118, the owner of the water of a mineral spring applied the name of "Bethesda" to the spring and used the mark "Bethesda" on barrels in which the water was shipped and recorded the word, and it was held that the name was a valid trade-mark and that the defendant, who owned another spring 1,200 feet from that of plaintiff, which was alleged to have exactly the same chemical constitution and curative properties, was not entitled to the use of plaintiff's trade-mark.

Actions to restrain the infringement of trade-marks are based upon the doctrine that the law will not allow one person to sell his own goods as and for the goods of another; and this is to prevent not alone fraud upon private rights, but as

well upon the public. *Marshall v. Pinkham,* 52 Wis. 572, 580, 9 N. W. 615; *Dunbar v. Glenn, supra.*

It may well be, as contended by appellant, that, when one owning a newly patented product gives it a name, such name becomes *publici juris* on the expiration of the patent; but the point has no bearing here. The patent which it is claimed covered the product was not put in evidence. There is no evidence that it covered the plaintiff's product, but only a part of the process of manufacture. It may have been on a mere detail. But more than this, the evidence as to the patent shows that, whatever it was, it was not granted until about twelve years after plaintiff coined and adopted the word "Carbolineum" for his product. The trade-mark antedated by about twelve years the patent, whatever the patent was, and the expiration of the patent in no way affected the trademark. *Batcheller v. Thomson,* 93 Fed. 660, 35 C. C. A. 532.

It is also argued that plaintiff abandoned the right to use the word "Carbolineum" as his trade-name. On this point, also, the evidence and findings are against appellant. It is unnecessary to discuss the evidence. It fully supports the finding. Plaintiff constantly used the word as his tradename and applied for registration of it in various foreign countries and was diligent in his efforts to protect it as his trade-name. The use of his name in connection with "Carbolineum" did not amount to an abandonment. · Plaintiff is not confined to one form of his mark nor even to several marks. *Morrison v. Case,* 9 Blatchf. 548, Fed. Cas. No. 9,845; *Hier v. Abrahams,* 82 N. Y. 519; *Ford v. Foster,* L. R. 7 Ch. 611, 616; *Johnson v. Bauer,* 82 Fed. 662. In *Dunbar v. Glenn,* 42 Wis. 118, 135, this court said:

"It seems to be well settled that the owner of any original trade-mark has an undoubted right to be protected in the exclusive use of all the marks, forms, or symbols that he may appropriate as designating the true origin or ownership of the article or fabric to which they are affixed."

In *Saxlehner v. Eisner & M. Co.* 179 U. S. 19, 21 Sup. Ct. 7, the court said (p. 33):

"It is not necessary to constitute an infringement that every word of a trade-mark should be appropriated. It is sufficient that enough be taken to deceive the public in the purchase of a protected article."

The fact that plaintiff registered the words "Carbolineum Avenarius" in this country was no abandonment of the word "Carbolineum" as his trade-mark, at least unless it was shown that he intended such abandonment, and the court below found otherwise. The registration does not create nor destroy rights in a trade-mark. The right to use a device to distinguish the goods made or sold by a person whose mark it is, has long been recognized by the common-law and chancery courts of England and this country. "This exclusive right was not created by the act of Congress, and does not depend upon it for its enforcement. The whole system of trade-mark property and the civil remedies for its protection existed long anterior to that act, and have remained in full force since its passage." The right depends upon priority of appropriation. *Trade-mark Cases,* 100 U. S. 82; *Ex parte Carborundum Co.* 118 Off. Gaz. 2250; *A. Leschen & Sons R. Co. v. Broderick & B. R. Co.* 123 Fed. 149.

Error is assigned because the trial court refused to find that Austria had canceled the plaintiff's trade-name "Carbolineum," and also because the court refused to find that Presser had registered a trade-mark in Germany which included the word "Carbolineum." It is at least very doubtful whether the evidence offered was competent to prove the facts sought to be established under this head. But, even if so, the evidence offered was immaterial. The plaintiff advertised and sold his goods in Europe from the time he adopted his trade-name in 1876 until 1886 and endeavored in every way to protect it as his trade-name. Whether he could have registered it in foreign countries under their laws as a trade-

name is not material. Our courts are not bound by any foreign rule, judicial or otherwise, as to the precise essentials of a trade-mark. The question is whether plaintiff's claim is in harmony with the law, written and unwritten, of this country. Nor do our courts decide what trade-marks exist or do not exist in foreign countries. The question is whether the plaintiff was entitled to have his trade-name recorded here. *Vacuum O. Co. v. Eagle O. Co.* 122 Fed. 105; *Hohner v. Gratz,* 50 Fed. 369; *The Apollon,* 9 Wheat. 362; *De Brimont v. Penniman,* 10 Blatchf. 436, Fed. Cas. No. 3,715; Browne, Trade-marks, §§ 50, 51.

The court below found that there was a material difference between the two products and this finding is clearly supported by the evidence. Nor is there any doubt under the proof made of the intention of the defendant to deceive and appropriate the trade-name of the plaintiff for his own benefit and to the damage of the plaintiff. It is unnecessary to go into a discussion of the evidence under this head.

Nor has any laches been shown upon the part of the plaintiff. On the contrary, from first to last plaintiff appears to have been diligent in endeavoring to protect his use of the trade-name "Carbolineum." He could not protect it further than he did in foreign countries under their laws. In October, 1886, he applied for registration, and in February, 1887, his trade-name was registered in the United States, and at the time plaintiff first used the word "Carbolineum" it had not been used by any other person for any purpose and was wholly unknown. It follows that the judgment of the court below must be affirmed.

*By the Court.*—The judgment is affirmed

TIMLIN, J. (*dissenting*). The pivotal facts in this case are established beyond controversy, although not all included in the findings of fact of the trial court.

1. The plaintiff is a citizen and resident of the municipal-

ity of Gau-Algesheim in the grand duchy of Hesse in the
German Empire, where he is now and has been since 1876
engaged in the manufacture and sale of a wood-preserving
compound produced by distillation from coal tar. This com-
pound he discovered in 1876. It was unknown prior to that
time. To this new compound he gave at the time of its dis-
covery the name of "Carbolineum," a word not theretofore
in use and coined or devised by him from the Latin words
"carbo," signifying coal, and "oleum," meaning oil. The
amended complaint avers that "plaintiff coined, invented,
originated, and adopted the arbitrary fanciful word symbol
'Carbolineum' as *a name* and a trade-mark for his said paint
and liquid." The plaintiff testifies:

"I constructed this word out of my own fancy in analogy
to the Latin words 'carbo,' coal, and 'oleum,' oil, and in doing
so it was my purpose *to make my goods known by this word,*
which up to that time had not been in existence, *and* to use
the word as a trade-mark. I called my goods by the name
'Carbolineum,' offered them for sale under that name in let-
ters, circulars, and advertisements and invoiced them as such,
and marked the packages, so far as possible, with this name.
Under the early German trade-mark law the protection of
word trade-marks was not feasible, and legal protection could
not be obtained there for the word 'Carbolineum' I had cre-
ated. Legal proceedings against its misuse were useless."

The ninth finding of the circuit court was as follows:

"That during all said time of plaintiff's said use of said
word, both in said European countries and in the United
States, said plaintiff has claimed and intended said word as
his trade-mark, and *as a specific name and designation for his
said product,* to indicate that the article to which the same
was so applied and affixed was the manufacture of said plaint-
iff, and that said plaintiff has relied upon said name and des-
ignation to distinguish his said product with the public and
to indicate its origin, and that his said product is so distin-
guished with the trade by said name and designation, as thus
indicating its origin."

From the foregoing it must be assumed as a verity in this case that the plaintiff, upon the discovery of an article or compound never theretofore known, gave it a name devised by him and never theretofore known or used, and that in so doing he had the double purpose of designating this new discovery by this new name and also claiming this name by which the new discovery was solely known as a trade-mark. I think the law, properly understood and applied, does not permit of the adoption of such name as a trade-mark nor the use of any word, however arbitrary and fanciful, for this double purpose. The reason for this rule lies in the legal nature of a trade-mark. An essential of a trade-mark is that it is employed to distinguish the goods of its owner from like goods of another. A postulate of the law of trade-marks is that there are or may be others manufacturing, selling, and dealing in goods of the same kind as those protected by the trade-mark which might but for the trade-mark be mistaken by the purchaser for the goods of the owner of the trade-mark. To permit the discoverer of a new article or compound to coin any name by which that article or compound shall be known and at the same time adopt that name as a trade-mark would be to foster a monopoly and defeat the most fundamental idea of trade-mark law. When an article is made that was theretofore unknown it must be given a new name by which it can be recognized and dealt in, and the name thus given to it becomes public property, and all who deal in the article have the right to designate it by the name by which alone it is recognized. *Leclanche B. Co. v. Western E. Co.* 23 Fed. 276; *Leonard & Ellis v. Wells & Co.* 53 L. J. Ch. 233. When the judgment in the case last cited came before the court of appeals (53 L. J. Ch. 603), the opinion of the Lord Chancellor went largely on the ground that the word "Valvoline" had been used as a descriptive term to designate a certain kind of oil and that the claimants of the trade-mark used it for this double purpose, and therefore others might use the word

Avenarius v. Kornely, 139 Wis. 247.

"Valvoline" as descriptive of the thing which they made and in such a way as not to represent that it was the product, manufacture, or property of the claimants.   COLTON, L. J., said:

"Undoubtedly, in my opinion, when a man invents a new article, and invents a word as descriptive of that article, which all the world are at liberty to make, he stands in a very great difficulty as regards claiming for himself the exclusive use of that name which he has invented to describe the article which he himself has invented."

FRY, L. J., said:

"Now, when a new material is invented, and at the time a new single word is invented which is applied to that material alone, I am by no means satisfied at present that that single word can be treated as a special and distinctive word within the meaning of the section I have read.   It is difficult to suppose that one word can both describe the thing as made by anybody and the thing as made by a particular maker."

See, also, *Linoleum Mfg. Co. v. Nairn*, 38 L. T. Rep. N. s. 448, 47 L. J. Ch. 430; also *Holzapfel's C. Co. v. Rahtjen's A. C. Co.* 183 U. S. 1, 22 Sup. Ct. 6.

As I understand the case last cited, there is properly deducible therefrom the fourth proposition of the syllabus, viz.:

"When the right to manufacture became public, the right to use the only word descriptive of the article manufactured became public also."

This rule is not limited to the case of patented articles upon which the patent has expired.   Such cases are merely illustrative of the rule—a narrow application of the more general rule that the right to use the only word descriptive of the article manufactured is the right of the public.   It cannot make any difference how this word became the only word descriptive of the article. *Oglivie v. G. & C. Merriam Co.* 149 Fed. 858 (expiration of copyright); *Warren F. Co. v. Am. F. Co.* 141 Fed. 513 (expiration of some patents); *Singer Mfg. Co. v. June Mfg. Co.* 163 U. S. 169, 16 Sup. Ct. 1002

(expiration of all patents); *In re Magnolia M. Co.'s Trademarks,* 14 Rep. Pat. Cas. 621 (discovery of secret process); Kerly, Trade-marks, 243.    It is not because there were letters patent, which letters have expired, that the public may make and sell the article by its patented designation, but because the designation of the patented article has become descriptive and has become the name by which the article is known.

In *In re Chesebrough Mfg. Co.'s Trade-mark,* 19 Rep. Pat. Cas. (1902) 342, this question is suggested in the majority opinion at page 353, but it was not decided, because there was evidence that the word "Vaseline" was used originally to denote the goods manufactured by the Chesebrough Company. In the opinion of Justice COZENS-HARDY it is said:

"I have reluctantly come to the conclusion that it appears from the appellant's own evidence that the word 'Vaseline' was an invented word to describe an invented thing, and, if so, I think it follows that any one was at liberty to make the invented article, which was not protected by patent in England, and at liberty to call it by the name attributed to it by the inventor.    In the case of *Linoleum Mfg. Co. v. Nairn,* L. R. 7 Ch. D. 834, Mr. Justice FRY applied this principle to the case of a patented article after the expiration of the patent, but I think it cannot be limited to that case."

No one can claim protection for the exclusive use of a trade-mark or trade-name which would practically give him a monopoly.    *Canal Co. v. Clark,* 13 Wall. 311, 323.

It may be said that the inventor of a new compound who at the same time invents a new name for such compound does not thereby prevent others from devising other new and fanciful names for the same compound, and this is true.    This privilege on the part of others would be of little practical use to them, but that is quite immaterial.    The real objection is that such use of a newly coined word as a trade-mark enables the owner at once to describe the new compound by that name without reference to who makes it or where it is made, and at the same time appropriate that word as a sign to the pub-

lic that the particular goods so marked are not of or belonging to the class or genera indicated by that name, but are distinguished therefrom as the superior product in that line of his own skill, industry, or honesty. These two uses of the invented word are to me inconsistent. If so, it follows that the exclusive use must yield. This is my first ground of dissent.

2. But the facts in this case additional to those above noted are that after plaintiff had been engaged for more than ten years in the manufacture and sale in Germany of "Carbolineum," and on February 8, 1887, he registered in the Patent Office of the United States as his trade-mark for preservative liquids the word "Carbolineum." Two years thereafter and on April 19, 1889, he registered in the same office as his trade-mark for preserving paint the words "Carbolineum Avenarius." Prior to such registry the word "Carbolineum" had become known in Germany and elsewhere in Europe as a name descriptive of this product of coal tar. George Presser, who lived in the same village with plaintiff, according to plaintiff's testimony began in 1882 to use the word "Carbolineum" as the name of a commodity which he, Presser, manufactured and sold and continues the same up to the present time. Exhibit A, a circular which the plaintiff issued to the German trade in 1885, complains that certain parties "continue to advertise with unbecoming praises preparations of demonstrably inferior value, under the same designation, using the name 'Carbolineum' chosen by us about ten years ago for our product." It further sets forth that "prominent in the class pointed out is the firm of Presser, a firm which goes so far in charlatanry as to advertise its product as being of 'worldwide fame,' and does not shrink from designating the 'Carbolineum Presser as the only right impregnated oil.'" Again:

"A 'Carbolineum Lendle' has lately also been offered for sale, which announces its advantages in like 'modest' manner, without the least restraint, and which might be regarded as

passable, if its manufacturers had copied the qualities of our antisepticum as well as the prospectuses concerning it.    Lendle's imitation differs from Carbolineum Avenarius similarly to the surrogate of Presser.    From all this it appears that our original product, which by way of distinction we now call 'Carbolineum Avenarius,' has not been approximately reached in any quarter.    The name 'Carbolineum' is our intellectual property, the composite parts and the composition of our product are our secrets, and in view of its recognized qualities attested by numerous and unusually favorable testimonials, partly founded upon ten years' use, given by state and civil authorities, by railroad administrations, by construction engineers, manufacturers, in agricultural articles, etc., it is not to be wondered at that here and there are found imitators which—if we did not put up a front against them— would be able to bring the name of 'Carbolineum' into discredit within a short time.    Our three factories are fully occupied with the manufacture of Carbolineum Avenarius, and the extent of our sales offers the best proof of the general approbation which our antisepticum is finding at home and abroad.    For the benefit of those interested, who are not intimately acquainted with our product, we would add that Carbolineum Avenarius is an antiseptic, thin liquid used for coating and impregnating, instead of oil paint or tar," etc.

To my mind the foregoing proves to a demonstration that in 1885, prior to the registration in the United States Patent Office by the plaintiff of the word "Carbolineum:" (1) That the word was in common use in Germany to designate a preservative liquid.    Only Presser and Lendle are named, but the circular also speaks of a class.    These two with their clients or customers were enough.    (2) Prior to the registry in the United States Patent Office the plaintiff had adopted as his trade-mark, not the word "Carbolineum," but the words "Carbolineum Avenarius," to designate his particular product of antiseptic, thin liquid used for coating and impregnating instead of oil paint or tar.

The plaintiff produced another circular issued by him in Germany in 1890, in which, among other things, he accused

Robert Krause of Wittenberg of making attacks upon Carbolineum Avenarius, and endeavoring to capture for his pseudo-carbolineum the preference. In this circular the plaintiff declares:

"To this paint invented by us whose composition is known to ourselves alone we gave the name of Carbolineum, a name which was not in existence before. We *wanted to indicate thereby that this paint was an oleaginous liquid (oleum) derived from coal (carbo)*."

To me this circular indicates in 1890 a disclaimer of any trade-mark consisting of the word "Carbolineum" and a claim that the plaintiff's trade-mark consists of the words "Carbolineum Avenarius," and a concession that the word "Carbolineum" was descriptive only. The defendant is shown to have been dealing in and selling Presser's Carbolineum manufactured by George Presser at the German municipality mentioned and exported therefrom to this country to the defendant to sell under the name of "Carbolineum Presser," and George Presser has a trade-mark officially registered in the proper department of the German Empire containing a center wheel with scrolls in an oval and the words "Schutzmarke für das Carbolineum. Georg Presser. Gau-Algesheim."

A witness for the plaintiff testified that he knew carbolineum from different factories in Switzerland in 1883, and there is in evidence a judgment of one of the imperial courts of Austria rejecting the word "Carbolineum" as a trade-mark because a word descriptive of a known compound, in an action in which this plaintiff herein was plaintiff and several other persons were defendants. Several books were introduced in evidence containing the word "Carbolineum" and definitions thereof, but none of them published earlier than 1900. It was admitted in the case that there is a large number of manufacturers in Germany manufacturing a product called "Carbolineum." It was shown that the plaintiff had procured in Germany in 1888 a patent on some part of

the process of making his wood preservative, but it is not shown what the patent covered, or whether still in force, nor what the designation employed therein to identify the liquid.

The judgment of the court below prohibits the defendant from advertising, offering for sale, or selling any preservative paint or liquid other than the product of the plaintiff by or under the name or designation of "Carbolineum." It seems to me that in rendering this judgment the court below treated the alleged trade-mark consisting of the word "Carbolineum" as still in force, notwithstanding the later registration of the trade-mark "Carbolineum Avenarius," and treated the German trade-mark of George Presser as having no force or effect, and ignored the evidence that prior to plaintiff's registration of the word "Carbolineum" as a trade-mark in the United States this word had become in Germany and elsewhere in Europe a common noun word descriptive of this compound, and throughout the case seems to consider a trade-mark somewhat analogous to a patent or copyright, and to depend upon priority of discovery of the compound or upon priority of invention of the name. Certainly the situation in which the case is left declares it to be the law of Wisconsin that Avenarius can exclude from Wisconsin all other German or European imports of this preservative substance under the name "Carbolineum" because, notwithstanding that Avenarius has no right to this trade-mark at the place of his residence and citizenship as against George Presser, he is given the right as against the consignee of Presser in Wisconsin by this decision. Supp. to Browne, Trade-marks (2d ed.) 161–164. But without going into this question of international regulations respecting trade-marks, I must upon the foregoing facts record my second ground of dissent; and that is that upon the uncontroverted evidence the word "Carbolineum" had become in Germany and elsewhere in Europe prior to the registration of that word as a trade-mark in the United States a common noun word descriptive of this certain liquid

wood preservative derived by distillation from coal tar, which any one was free to make and of course to call by its true name, and therefore the judgment enjoining the use of that word by defendant was wrong. *Selchow v. Chaffee & S. Mfg. Co.* 132 Fed. 996; *Dadirrian v. Yacubian,* 72 Fed. 1010; *S. C.* 98 Fed. 872; *S. C.* 90 Fed. 812. I think the judgment should be reversed for these errors.

DODGE, J. I concur in the foregoing dissenting opinion of Mr. Justice TIMLIN.

BARNES, J. I concur in the foregoing dissenting opinion of Mr. Justice TIMLIN.

WINSLOW, C. J. (*concurring*). In 1876 the plaintiff invented or discovered a compound, of which coal oil formed an important part, which was valuable as a preservative of wood, and also invented and applied to this article a new and arbitrary name, viz., "Carbolineum," under which name it was sold in Germany for ten years and acquired a reputation. Under the laws of Germany this arbitrary word could not become a trade-mark. In 1886 the plaintiff commenced to sell the article in this country and at once registered the word as his trade-mark. Should he be protected in its use? This is the question presented in this case, and it seems that it must be answered in the affirmative. It would be impossible to harmonize all of the trade-mark decisions nor need the attempt be made. The principle is very well established that he who invents and applies a new word or name to an article which he makes or sells, not descriptive of the article or its qualities, nor deceptive, but fanciful and arbitrary, though perhaps suggestive, will be protected in the use of the word or name as a trade-mark. Browne, Trade-marks (2d ed.) § 219. This court has adopted this doctrine. *Gessler v. Grieb,* 80 Wis. 21, 48 N. W. 1098; *Listman M. Co. v. Wm. List-*

*man M. Co.* 88 Wis. 334, 60 N. W. 261.    This principle protects the plaintiff here because his invented word was arbitrary and fanciful and did not describe the quality of the article or its ingredients, but was merely suggestive that carbon or coal had something to do with it.    It would be impossible to hold that the word even suggests "oleum" or oil.

The appellant claims that the sale of the article under this name for ten years has made the word descriptive and deprived the plaintiff of the fruits of his ingenuity and business sagacity.    With reference to this contention it is well said in *Selchow v. Baker,* 93 N. Y. 60 (cited with approval in *Gessler v. Grieb, supra*):

"It cannot be true as a general proposition . . . that when a manufacturer has given to his products a new name invented by himself for the purpose of distinguishing them as his, and the article becomes generally known to the trade and to the public by that name, the name becomes public property and every one has a right to use it.    That proposition can be sustained only in respect to names which are descriptive of the article and incapable of being appropriated as trademarks.    The value of a trade-mark consists in its becoming known to the trade as the mark of the manufacturer who has invented or adopted it and in being known to the public as the name of an article which has met with popular favor.    It cannot be that the very circumstances which give it value operate at the same time to destroy it."

The words "Cocaine," "Cottolene," "Valvoline," and "Saponifier" are precisely parallel to the word "Carbolineum." All are arbitrary words, coined by the maker of a compound as a name for his special product, suggestive but not descriptive, and all have been sustained as valid trade-marks.    In the *Cottolene Case* it is said (*N. K. Fairbank Co. v. Central L. Co.* 64 Fed. 133):

"It is well settled that the inventor of an arbitrary or fanciful name may apply it to an article manufactured by him to distinguish his manufacture from that of others, and that the

subsequent use of such word by the public to denote the article does not deprive the originator of such word of his exclusive right to its use."

To the same effect are the cases of *Celluloid Mfg. Co. v. Cellonite Mfg. Co.* 32 Fed. 94, and *Celluloid Mfg. Co. v. Read,* 47 Fed. 712.

Both upon principle and authority it seems that the trial court was right in its conclusions.